**HYLSA, S.A. de C.V., Plaintiff,**

**and**

**TUBERIA NATIONAL, S.A. de C.V., Plaintiff-Intervenor,**

**v.**

**The UNITED STATES, Defendant,**

**and**

**Wheatland Tube Company, Defendant-Intervenor.**

**Slip Op. 97–26.**
**No. 97–01–00132.**

United States Court of International Trade.

Feb. 20, 1997.

Shearman & Sterling (Jeffrey M. Winton), Washington, DC, for plaintiff.

White & Case (David E. Bond and Walter J. Spak), Washington, DC, for plaintiff-intervenor.

Frank W. Hunger, Assistant Attorney General, David M. Cohen, Director, Commercial Litigation Branch, Civil Division, United States Department of Justice (Randi–Sue Rimerman), Mark Barnett, Carlos Garcia, and David Ross, Office of the Chief Counsel for Import Administration, Department of Commerce, Washington, DC, for defendant.

Schagrin Associates (Roger B. Schagrin), Washington, DC, for defendant-intervenor.

## OPINION

RESTANI, Judge:

This matter is before the court on plaintiff's motion for preliminary injunction and defendant's motion to dismiss. This action was commenced on January 27, 1997, by Hylsa, S.A. de C.V. ("Hylsa"), a producer in Mexico of a product excluded from the scope of an antidumping order. The product is now the subject of an anticircumvention proceeding under the antidumping law. A previously issued order temporarily restraining the proceedings has been dissolved.

## FACTS

On October 21, 1991, the United States Department of Commerce ("Commerce") initiated antidumping duty investigations covering circular welded non-alloy steel pipe ("standard pipe") from Brazil, Korea, Mexico, Romania, Taiwan and Venezuela. *See Circular Welded Non–Alloy Steel Pipe From Brazil, the Republic of Korea, Mexico, Romania, Taiwan, and Venezuela,* 56 Fed.Reg. 52,528, 52,528 (Dep't Comm.1991) (initiation of antidumping duty investigation). The investigations resulted in the publication of antidumping duty orders covering standard pipe from Brazil, Korea, Mexico, and Venezuela. *See Certain Circular Welded Non–Alloy Steel Pipe from Brazil, the Republic of Korea (Korea), Mexico, and Venezuela, and Certain Circular Welded Non–Alloy Steel Pipe from Korea,* 57 Fed.Reg. 49,453, 49,454 (Dep't Comm.1992) (notice of antidumping duty orders and amendment to final determ. of LTFV sales from Korea).

On April 23, 1993, the domestic producers who were the petitioners in Commerce's original antidumping investigations filed petitions with Commerce claiming that exports from Korea, Mexico, and Brazil of API 5L line pipe and dual-certified pipe were circumventing the antidumping duty orders on standard pipe. *See Certain Circular Welded Non–Alloy Steel Pipe from Mexico,* 62 Fed.Reg. 1429, 1429 (Dep't Comm.1997)(initiation of anticircumvention inquiry on antidumping

duty order)[hereinafter *"Initiation of Anticircumvention Inquiry "*]. Petitioners alleged that exporters of standard pipe were circumventing the antidumping duty orders by having pipe intended for use as standard pipe certified as line pipe or as both line and standard pipe. *Id.* Petitioners further alleged that this more stringently certified pipe was, in fact, being used in standard pipe applications. *Id.* Petitioners contended that such actions constitute a "minor alteration of merchandise" within the meaning of section 781(c) of the Tariff Act. *Id.*

After examining petitioners' allegations, Commerce did not initiate an anticircumvention inquiry pursuant to 19 C.F.R. § 353.29(g) (1995). *Id.* Instead, it initiated a scope inquiry pursuant to 19 C.F.R. § 353.29(i) to determine whether API 5L line pipe and dual-certified pipe, when actually used in standard pipe applications, is within the scope of the antidumping duty orders covering standard pipe. *Id.* Petitioners did not object to conducting the proceeding as a scope inquiry.

On April 12, 1996, Wheatland Tube Company ("Wheatland"), one of the original petitioners, filed a suit challenging the final scope determination. *Wheatland Tube Co. v. United States,* No. 96–04–01078 (Ct. Int'l Trade filed Apr. 12, 1996). Wheatland challenged both Commerce's conclusion that line pipe and dual-certified pipe were not within the scope of the antidumping duty orders on standard pipe, as well as Commerce's failure to conduct an anti-circumvention inquiry pursuant to 19 U.S.C. § 1677j(c) (1994). *See Initiation of Anticircumvention Inquiry,* 62 Fed.Reg. at 1429.

On July 12, 1996, Commerce requested a voluntary remand in *Wheatland* in order to reconsider Wheatland's anticircumvention petition of April 23, 1993. The request for remand was contested. In September 1996, Commerce responded to an earlier Congressional inquiry, noting its request for remand and indicating it would act on the request for a circumvention inquiry as soon as possible.[1] On October 9, 1996, the court denied Com-

---

1. Letter from Robert LaRussa, Acting Assistant Secretary for Import Administration within Commerce, to Senator Orrin Hatch (Sept. 6, 1996) (on file with Department of Commerce); *See* Pl.'s Br. at 7 n. 7.

merce's request for remand, ruling that: "Commerce set forth its reason; no objection was made to treating the request as one for a scope determination; and it would be a waste of time and improper to order a remand until error has been demonstrated." *Wheatland Tube Co. v. United States,* No. 96–04–01078 (Ct. Int'l Trade Oct. 9, 1996) (order denying defendant's motion to remand). Also on October 9, 1996, in response to a separate motion, the court dismissed all parts of the complaint concerning Wheatland's appeal of Commerce's scope determination as it related to the antidumping duty order on standard pipe from Mexico. *Wheatland Tube Co. v. United States,* No. 96–04–01078 (Ct. Int'l Trade Oct. 9, 1996) (order granting plaintiff's voluntary motion to dismiss).

On January 10, 1997, Commerce published a notice that it was initiating an anticircumvention inquiry, pursuant to section 781(c) of the Tariff Act, to determine whether imports from Mexico of line pipe or dual-certified pipe were circumventing the antidumping duty order on standard pipe from Mexico. *See Initiation of Anticircumvention Inquiry,* 62 Fed.Reg. at 1430.[2]

In this notice, Commerce noted that the regulations contained in 19 C.F.R. § 353.29(b) govern its initiation of an anticircumvention inquiry upon application by an interested party. This section provides that an application for an anticircumvention inquiry must contain: (1) a detailed description of the product, including technical characteristics and uses of the product, and its current United States Tariff Classification number; and (2) a statement of the interested party's position as to whether the product is within the scope of an antidumping order, including (i) a summary of the reasons for this conclusion, (ii) citations to any applicable statutory authority, and (iii) attachment of any factual

support for this position. 19 C.F.R. § 353.29(b).

Commerce explained that because the petition contained the information required by 19 C.F.R. § 353.29(b) it evaluated the application to determine whether a formal inquiry was warranted. *Initiation of Anticircumvention Inquiry,* 62 Fed.Reg. at 1429–30. That evaluation is set forth in a December 20, 1996 memorandum from Joseph A. Spetrini to Robert S. LaRussa. (Memorandum from Joseph A. Spetrini, Deputy Assistant Secretary Enforcement Group III, on *Certain Circular Welded Non–Alloy Steel Pipe from Mexico,* to Robert LaRussa 5 (Dec. 20, 1995); Pl.'s., attachment 2) [hereinafter "Spetrini Memorandum"]. Commerce concluded that a formal circumvention inquiry was warranted because:

> First, the record of our earlier scope proceeding does not explain adequately why 'a scope inquiry pursuant to 19 CFR § 353.29(i) was the appropriate avenue for addressing the issues raised by petitioners.' (*see Final Negative Determination of Scope Inquiry,* 61 FR 11,608)[.] Second, while we understand that there is an argument that our negative scope determination of March 1996 forecloses any further inquiry into the status of line pipe and dual-certified pipe, we believe that in this instance the law is unsettled concerning the precise relationship between a scope inquiry and an anticircumvention inquiry. Finally, we believe a formal inquiry is warranted because petitioners have produced sufficient allegations of circumvention to warrant further inquiry into whether imports of line pipe and dual-certified pipe are circumventing the antidumping duty order on standard pipe from Mexico.[3]

Spetrini Memorandum at 5.

Thus, Commerce did not decide prior to initiating the inquiry whether it had the stat-

---

**2.** Commerce noted that it was not initiating an anticircumvention inquiry with respect to pipe imports from Brazil and Korea because the court had denied its request for a voluntary remand. *Initiation of Anticircumvention Inquiry,* 62 Fed. Reg. at 1429 n. 3. Based on its actions with respect to Brazilian and Korean imports, it is clear that Commerce does not consider the second proceeding pursuant to the anticircumvention inquiry request totally separate from the first

proceeding as to scope. *See id.* Commerce did presume it had jurisdiction to conduct an anticircumvention inquiry as to Mexican imports following the voluntary dismissal of those aspects of the *Wheatland* case.

**3.** The parties clarified at oral argument that no post–1993 information was submitted.

utory authority to conduct the anticircumvention inquiry after the final scope determination had issued excluding the merchandise. In accordance with 19 C.F.R. § 353.29(j), however, Commerce did not instruct the United States Customs Service to suspend liquidation and require a cash deposit of estimated duties on the subject merchandise. *Initiation of Anticircumvention Inquiry*, 62 Fed.Reg. at 1430. Commerce also stated its intention to issue its final determination within 300 days of the initiation of inquiry. *Id.* At oral argument, Commerce advised that it was in the process of preparing questionnaires when it was restrained. Defendant and defendant-intervenor oppose the motion for preliminary injunction and seek dismissal of the action for lack of jurisdiction.

## STATUTORY BACKGROUND

Defendant seeks dismissal of this action for lack of jurisdiction. Two provisions within 28 U.S.C. § 1581 (1994) have relevance. 28 U.S.C. § 1581(c) reads as follows:

(c) The Court of International Trade shall have exclusive jurisdiction of any civil action commenced under section 516A of the Tariff Act of 1930.[4]

28 U.S.C. § 1581(c). Section 1581(i)[5] of Title 28 reads as follows:

(i) In addition to the jurisdiction conferred upon the Court of International Trade by subsections (a)-(h) of this section and subject to the exception set forth in subsection (j) of this section, the Court of International Trade shall have exclusive jurisdiction of any civil action commenced against the United States, its agencies, or its officers, that arises out of any law of the United States providing for—

(1) revenue from imports or tonnage;

(2) tariffs, duties, fees, or other taxes on the importation of merchandise for reasons other than the raising of revenue;

(3) embargoes or other quantitative restrictions on the importation of merchandise for reasons other than the protection of the public health or safety; or

(4) administration and enforcement with respect to the matters referred to in paragraphs (1)-(3) of this subsection and subsections (a)-(h) of this section.

This subsection shall not confer jurisdiction over an antidumping or countervailing duty determination which is reviewable either by the Court of International Trade under section 516A(a) of the Tariff Act of 1930 or by a binational panel under article 1904 of the North American Free Trade Agreement or the United States–Canada Free–Trade Agreement and section 516A(g) of the Tariff Act of 1930.

28 U.S.C. § 1581(i).

The substantive provision at issue, 19 U.S.C. § 1677j (1994) is entitled "Prevention of circumvention of antidumping and countervailing duty orders." Subsection (c) thereof is relevant here. It reads:

(c) Minor alterations of merchandise

(1) In general

The class or kind of merchandise subject to—

(A) an investigation under this subtitle,

(B) an antidumping duty order issued under section 1673e of this title,

(C) a finding issued under the Antidumping Act, 1921, or

(D) a countervailing duty order issued under section 1671e of this title or section 1303 of this title,

shall include articles altered in form or appearance in minor respects (including raw agricultural products that have undergone minor processing), whether or not included in the same tariff classification.

(2) Exception

---

4. Section 516A of the Tariff Act of 1930 is found at 19 U.S.C. § 1516a (1994). Defendant has not indicated which subsection of 19 U.S.C. § 1516a covers the decision which it contends ultimately will be reviewable here. The court assumes it relies on 19 U.S.C. § 1516a(2)(B)(vi) relating to scope of the class of the subject merchandise.

5. This matter would appear to fall into the literal language of subsection (i)(4) as it is related to either (i)(1) or (i)(2).

Paragraph (1) shall not apply with respect to altered merchandise if the administering authority determines that it would be unnecessary to consider the altered merchandise within the scope of the investigation, order, or finding.

19 U.S.C. § 1677j(c).

## JURISDICTION

The threshold issue before the court is whether the court has jurisdiction to review, prior to completion of the proceeding, Commerce's decision to commence the anticircumvention inquiry. Apparently it is agreed that upon completion the court would have jurisdiction over a challenge brought under 28 U.S.C. § 1581(c). For the purpose of this opinion the court accepts that proposition.[6]

Plaintiff relies on 28 U.S.C. § 1581(i), which grants the court jurisdiction where the avenues of relief available under the other provisions of § 1581 would be manifestly inadequate. *Miller & Co. v. United States,* 824 F.2d 961, 963 (Fed.Cir.1987), *cert. denied,* 484 U.S. 1041, 108 S.Ct. 773, 98 L.Ed.2d 859 (1988). The government argues that 28 U.S.C. § 1581(c) provides an adequate remedy because eventually the court may review under that jurisdictional provision whether or not Commerce had the authority to initiate the anticircumvention inquiry. Plaintiff responds that it has an immediate right to be free of a wholly unauthorized investigation.

The general trend of the opinions in this court is that, without more, harm attributable to participation in a potentially unauthorized antidumping proceeding is not sufficient to render the remedy affordable by 28 U.S.C. § 1581(c) manifestly inadequate. *See Hilsea Inv. Ltd. v. Brown,* 18 CIT 1068, 1071–72 (1994) (no jurisdiction under 28 U.S.C. § 1581(i) to review negative antidumping exclusion determination and related investigatory matters in the absence of unusual circumstances); *MacMillan Bloedel Ltd. v. United States,* 16 CIT 331, 333 (1992) (negative exclusion decision resulting in deposit obligation an ordinary consequence of

the statutory scheme; no jurisdiction under 28 U.S.C. § 1581(i)). *Accord China Bicycle Co.,(Holdings) Ltd. v. United States,* No. 95–11–01426 (Ct. Int'l Trade Dec. 8, 1995) (bench ruling) (no jurisdiction found under 28 U.S.C. § 1581(i) to review Commerce's determination of petition sufficiency).

The court does not find the decisions relating to unusual procedural consequences of administrative reviews of direct relevance. Cases which concern the detrimental effects on parties who are unable to participate in the review itself, *see, e.g., Asociacion Colombiana de Exportadores de Flores (Asocoflores) v. United States,* 13 CIT 584, 587–88, 717 F.Supp. 847, 850–51 (1989), *aff'd on other grounds,* 903 F.2d 1555 (Fed.Cir.1990), or who may not be able to obtain judicial review, *see, e.g., Jia Farn Manufacturing Co. v. Secretary of United States Department of Commerce,* 17 CIT 187, 189, 817 F.Supp. 969, 972 (1993) and *Carnation Enterprises Pvt. Ltd. v. United States Department of Commerce,* 13 CIT 604, 612, 719 F.Supp. 1084, 1091 (1989), are factually quite different from the case at hand. In each of these cases 28 U.S.C. § 1581(c) jurisdiction was found to be manifestly inadequate after examination of the factual and procedural ramifications of the case. Only the general principle of manifest inadequacy, which these cases reflect, is transferable to this action.

The court is convinced that 28 U.S.C. § 1581(i) is a Congressional fail-safe device. If the circumstances of a case are sufficiently unusual so that one may presume that Congress could not have provided for such a case under the general language of 19 U.S.C. § 1516a, and meaningful relief would not be available were one to await the conclusion of administrative proceedings, 28 U.S.C. § 1581(i) is available to afford a means of vindication of statutory rights. It may be for these reasons that the Court of Appeals has set forth a largely undefined standard of manifest inadequacy. It is impossible to foresee every factual situation where 28 U.S.C. § 1581(c) jurisdiction would be inadequate. Thus, neither Congress nor the

---

6. The parties have not argued that the analysis may be different because binational panel review

may be an option.

courts have attempted to precisely define this area. This also appears to be at least part of the reason why the Court of Appeals avoids pronouncing a clear line between §§ 1581(c) and 1581(i) jurisdiction if relief is not to be granted on the merits. *See, e.g., Shakeproof Indus. Prods. Div. of Illinois Tool Works, Inc. v. United States,* 104 F.3d 1309, 1312–14 (Fed.Cir.1997).

Realizing that factual distinctions are particularly important in this area, the court nonetheless notes that the case which seems most apposite to the case at hand is *Techsnabexport, Ltd. v. United States,* 16 CIT 420, 425, 795 F.Supp. 428, 434 (1992), wherein the court assumed jurisdiction under 28 U.S.C. § 1581(i) to determine if the United States could continue antidumping proceedings against the newly independent Soviet Republics when the proceedings had originated against imports from the Soviet Union.[7] *Id.* at 420, 795 F.Supp. at 431. The factors in favor of jurisdiction were a final agency decision on the legal issue at hand, an extremely unique factual situation, widespread international impact, the asserted right of nations to be completely free of the administrative proceedings, and allegations of patently *ultra vires* governmental action, as well as irreparable harm. *Id.* at 423–25, 795 F.Supp. at 433–36.

While certain factual dissimilarities exist between *Techsnabexport* and the case here, there are two similarities. First, both cases involve legal issues that are easily separated from any factual decision-making by the agency. Second, Hylsa asserts *ultra vires* action, irreparable harm and a right to be totally free·of participation in, and the effects of, the administrative proceedings. Given the clear Congressional preference expressed in 28 U.S.C. § 1581(i) for review in accordance with 19 U.S.C. § 1516a, the court is reluctant to interfere in ongoing proceedings absent clear indication of the lack of adequacy of a § 1581(c) review. Here, the search

for such an indication would, at least, begin with an analysis of the major *Techsnabexport* factors.

As indicated, one issue before the court in determining jurisdiction is whether the agency has acted *ultra vires. See Techsnabexport,* 16 CIT at 425, 795 F.Supp. at 434. In discussing this factor, it is impossible to separate completely matters relating to the merits of this action from the discussion of jurisdiction. The basic issue to be addressed in the underlying proceeding has already been resolved by the agency in its determination as to scope, that is, that it would not commence an anticircumvention proceeding based on the 1993 allegations. Judicial review was sought and then terminated as to Mexican imports because certain statutory prerequisites were not met. The domestic party felt aggrieved and sought relief from Congress. Following Congressional inquiry, the government, not yet having "decided" whether it could proceed anew, asked the court to remand the matter so that it might proceed. The court declined. The government now seeks to act through a second proceeding.

On its face, the statute favors plaintiff's interpretation. It would appear that where a product is excluded from the scope of an order, a party may not rely on the very facts which were considered in the scope determination to support an anticircumvention petition based on the "altered merchandise" provision. The scope order seemingly must be challenged directly. *See* 19 U.S.C. § 1677j(c)(2). The government has presented arguments that the statute may not mean what it seems to on its face. Those arguments are not developed fully and are not particularly convincing at this point. Nonetheless, it is not a futile exercise to provide the government with an opportunity to grapple with this issue in the first instance, and the plaintiff has a clear right of review in this court of the government's determination.

---

**7.** There is a certain faint resemblance here to a claim of prejudgment. *See, e.g., NEC Corp. v. United States,* Slip Op. 97–23, at 8, — CIT —, —, — F.Supp. —, — (Feb. 12, 1997) (recognizing jurisdiction over claim of prejudgment(citing *NEC Corp. v. United States,* No. 96–10–02360 (Ct. Int'l Trade Dec. 18, 1996)(mem. op. and order))), *writ of mandamus denied sub nom. In Re United States,* Misc. Doc. No. 499, 1997 WL 76161 (Fed.Cir. Feb. 11, 1997). The allegations here, however, are not specific enough to raise such a claim and Hylsa has not asserted that the administrative proceeding is somehow constitutionally infirm.

Plaintiff may prevail, at either level. Thus, § 1581(c) provides the plaintiff with a means of vindicating its claim.

A sub-issue before the court is whether Commerce may commence a proceeding when it has decided to do so without completing its statutory duty of interpreting the statute Congress entrusted it to administer, a duty which includes determining if it has authority to proceed. Here, Commerce decided to proceed ostensibly because technical regulatory shoals were navigated. The regulations, however, are only meaningful if the statute applies. While the agency's behavior is not above criticism in this regard the court cannot conclude at this stage that its behavior overall is patently *ultra vires*.

Another factor impacting jurisdiction is whether the lack of immediate review likely will result in irreparable economic harm. *See Techsnabexport*, 16 CIT at 425, 795 F.Supp. at 434. Because suspension of liquidation has not been ordered and no deposits are required currently and because plaintiff has made only vague allegations of the economic harm resulting from the commencement of the proceedings, this factor does not weigh in favor of assuming jurisdiction at this stage of the proceedings.

After balancing the various factors relevant to the issue of jurisdiction the court finds the normal avenues of review are not manifestly inadequate. Accordingly, the court finds jurisdiction is lacking and hereby dismisses this action.

### JUDGMENT