HYLSA, S.A. DE C.V., PLAINTIFF AND TUBERIA NACIONAL, S.A. DE C.V. AND ACEROTEX INTERNATIONAL, PLAINTIFF-INTERVENORS *v.* UNITED STATES, ET AL., DEFENDANTS AND ALLIED TUBE & CONDUIT CORP. AND WHEATLAND TUBE CO., DEFENDANT-INTERVENORS

Court No. 97–12–02168

(Dated February 3, 1998)

*Shearman & Sterling (Jeffrey M. Winton* and *Michael H. Strub, Jr.)* for plaintiff.
*White & Case L.L.P. (David E. Bond, Christopher M. Curran,* and *Lisa L. Hubbard)* for plaintiff-intervenors Tuberia Nacional, S.A. de C.V and Acerotex International.
*Frank W. Hunger,* Assistant Attorney General, *David M. Cohen,* Director, Commercial Litigation Branch, Civil Division, United States Department of Justice *(Randi-Sue Rimerman), Carlos Garcia,* Office of the Chief Counsel for Import Administration, Department of Commerce, of counsel, for defendant.
*Schagrin Associates (Roger B. Schagrin)* for defendant-intervenors Allied Tube & Conduit Corporation and Wheatland Tube Company.

## OPINION

RESTANI, *Judge:* This matter is before the court after a hearing on plaintiff Hylsa, S.A. de C.V.'s motion for preliminary injunction to enjoin the United States Department of Commerce ("Commerce") from conducting an anticircumvention inquiry to determine whether imports of line pipe and dual certified pipe from Mexico are circumventing the antidumping duty order on certain welded non-alloy carbon steel pipe from Mexico. At the request of all parties no further proceedings will be had in this matter and the court will enter final judgment. There are no factual issues to be decided except those that relate to jurisdiction, which, of necessity, were addressed at the preliminary injunction hearing. The legal issues have been thoroughly briefed. Commerce and defendant-intervenors, Wheatland Tube Company and Allied Tube & Conduit Corporation, seek dismissal of this action on the basis of lack of jurisdiction. They also seek judgment on the merits. Plaintiff and plaintiff-intervenors, Tuberia Nacional S.A. de C.V. ("Tuna") and Acerotex International (collectively "plaintiffs"), a pipe producer and an importer, respectively, seek to permanently enjoin Commerce from conducting the anticircumvention investigation, including any suspension of liquidation of line and dual certified pipe entries.

## BACKGROUND

The factual background of this action is addressed in large part in *Hylsa, S.A. de C.V. v. United States,* 960 F. Supp. 320 (Ct. Int'l Trade 1997), *appeal docketed,* No. 97–1270 (Fed. Cir. Apr. 17, 1997) [hereinafter *"Hylsa I"*]. *Hylsa I* dismissed for lack of jurisdiction Mexican producer Hylsa's action seeking to enjoin an investigation of oil pipeline goods to determine whether they should be included within the scope of the antidumping duty order on standard pipe products, pursuant to the anticir-

cumvention provisions of the unfair trade laws, specifically 19 U.S.C. § 1677j(c) (1994). *Id.* at 325. The facts which existed prior to that decision will not be fully set forth again here.[1] Since that time Commerce has proceeded with its investigation and issued a preliminary determination that the scope of the antidumping duty order should be enlarged to cover line and dual certified pipe unless accompanied by an end-use pipe certification that demonstrates that the entries are not used in place of standard pipe. *Certain Circular Welded Non-Alloy Steel Pipe From Mexico; Affirmative Preliminary Determination of Circumvention of Antidumping Duty Order* (Dec. 19, 1997), at 24, 27–28, Pl.'s Br., Ex. 3.

The affirmative preliminary determination resulted in a suspension of liquidation, as required by 19 U.S.C. § 1673b and 19 C.F.R. § 353.29(j). *Id.* at 28. Although the duty rates are low, suspension means that the potential for duties is now unlimited and importers may be subjected to increased duties in the future on any entry for which liquidation is suspended.

There has been another development since the time of *Hylsa I*. Because the Commerce Department declined to perform a scope investigation under the anticircumvention laws of exports from Korea, Mexico and Brazil and reached a final scope determination[2] that excluded line or dual certified pipe, domestic producer Wheatland Tube Company, a defendant-intervenor here, challenged that decision. In the course of Wheatland's action, the action as to Mexican imports was terminated because Wheatland did not follow the steps necessary to obtain jurisdiction in this court over them. While the action was pending Commerce also changed its mind and decided it wished to do the anticircumvention inquiry. This factual background is set forth in detail in *Wheatland Tube Co. v. United States*, 973 F. Supp. 149 (Ct. Int'l Trade 1997), *appeal docketed*, Nos. 98–1102, 98–1103 (Fed. Cir. Dec. 1, 1997) (The United States has since dismissed its appeal (98–1103), but that of Wheatland continues.). In *Wheatland Tube*, which covers Korean, Brazilian and Venezuelan pipe, *id.* at 151, and was decided after *Hylsa I*, the court determined that Commerce's final scope determination, which included the decision not to proceed under the anticircumvention laws, was not in error and sustained it. *Id.* at 164. Thus, no anticircumvention proceeding took place as to pipe with other than Mexican origin. Line and dual certified pipe from Korea, Brazil and Venezuela continues to be imported without any antidumping duty potential.

---

[1] A brief summary of the facts follows. In 1992, Commerce published antidumping duty orders covering standard pipe from Brazil, Korea, Mexico and Venezuela. *Hylsa I*, 973 F. Supp. at 321 (citing 57 Fed. Reg. 49,453). On April 23, 1993, Wheatland Tube Company and other domestic producers filed petitions with Commerce claiming that exports from Korea, Mexico and Brazil of certain line pipe and dual certified pipe were circumventing the antidumping duty orders on standard pipe. Initially, Commerce did not initiate a scope inquiry under anticircumvention provisions but instead initiated an ordinary scope inquiry pursuant to 19 C.F.R. § 353.29(i). On January 10, 1997, Commerce initiated an anticircumvention inquiry as to pipe from Mexico which led to the court's decision in *Hylsa I*. At that time, Commerce indicated that it would not initiate a similar inquiry with respect to pipe imports from Brazil and Korea.

[2] *See Certain Circular Welded Non-Alloy Steel Pipe from Brazil, The Republic of Korea, Mexico and Venezuela*, 61 Fed. Reg. 11,608 (Dep't Commerce 1996) [hereinafter *"Final Scope Determination"*].

In the action now before the court, the court has temporarily restrained Commerce from suspending liquidation of entries of line and dual certified pipe from Mexico, and all pipe imports, from whatever source, are on an equal footing.

JURISDICTION

Although defendants have argued that this case may not go forward because the *Hylsa I* appeal divested this court of jurisdiction, this does not appear to be the case. It is true that very similar jurisdictional issues were explored at length at the *Hylsa I* hearing; *Hylsa I*, however, is a different action based on different facts. The court of appeals does not have before it the preliminary determination which underlies this action. Although the same remedy was sought, *i.e.* injunction of the Commerce proceedings, the parties have produced no case which indicates that seeking the same remedy, by itself, makes the cases the same for purposes of divesting the court of jurisdiction. In fact, this argument has not been seriously pressed since the first hearing on continuation of the temporary restraining order. While the court is, of course, reluctant to take action which may cause the parties to dismiss an appeal and thus perhaps intrude indirectly into the process of another court, resolution of *Hylsa I* in the appellate court will not necessarily resolve the issue raised here. It would also appear improper not to consider new allegations of irreparable harm just because another case based on a lesser harm is pending on appeal.

The real issue is the more ordinary one of whether this court has jurisdiction pursuant to 28 U.S.C. § 1581(i) when eventually review could be had at the conclusion of administrative proceedings, either in this court under 28 U.S.C. § 1581(c) or before a binational panel. The longstanding accepted answer is "yes," if the § 1581(c) remedy would be manifestly inadequate. *Miller & Co. v. United States*, 824 F.2d 961, 963 (Fed. Cir. 1987).

The Mexican producers and importers have produced evidence that the suspension of liquidation will cause them serious economic harm. Hylsa produced evidence that during the last suspension, when duty rates were also low or nonexistent, it lost large sums of money because of the uncertainties caused by suspension. *See Treviño Aff.* (Jan. 9, 1998), at 2, Pl.'s Supp. Br., Ex. 3.[3] TUNA, another Mexican producer, and Acerotex International, an importer, produced evidence of drastic economic harm. Acerotex produced evidence of the potential for complete failure, *Testimony of Raymond Davila at hearing on 1/29/98*, and TUNA produced evidence of economic loss resulting from the need to terminate its limited line pipe business, for which capital and other investments have been made, *Testimony Fabricio Bernal at hearing on 1/29/98*. Further-

---

[3] While Mr. Treviño was not made available for cross-examination as to the exact sum lost, the general harm claimed seems clear. After all, the purpose of the suspension and duty imposition is to boost fairly priced sales to the detriment of the allegedly unfair sales. The testimony of the witnesses also corroborates the affidavit. Further, even without the affidavits submitted by Hylsa, the court would find the necessary lack of adequate remedy based on the witnesses who did testify.

more, the claims of dire consequences have credibility as it is clear that the Mexican imports are not competing on an even playing field. Only they are subject to the suspension because of the procedural quirk which ended the *Wheatland Tube* appeal as to them. Furthermore, all plaintiffs produced evidence that they will not be able to obtain end-use certifications because of multi-layered distribution channels (i.e. end use is not known at the time of importation) and the ability of buyers to obtain Korean or domestic line pipe without the burden of end-use certification. *See, e.g., Confidential Aff.* (Jan. 6, 1998), at 2–3, Pl.'s Supp. Br., Ex. 4; *Testimony of Keith Hudgins at hearing on 1/29/98.* The totality of the evidence does not reveal an ordinary economic harm situation and it does not arise out of the ordinary conduct of unfair trade proceedings, as will be explained.

The demonstration of grave economic harm takes place against the background of a final negative scope determination in *Certain Circular Welded Non-Alloy Steel Pipe from Brazil, the Republic of Korea, Mexico and Venezuela,* 61 Fed. Reg. 11,608 (Dep't Commerce 1996), which was sustained in *Wheatland Tube.* In that case the court concluded that an anticircumvention proceeding would be legally improper. In *Hylsa I* the court found that Commerce should take the opportunity to explore whether the proceeding was legal. *See* 960 F. Supp. at 325. This circumstance no longer exists. It is futile for the parties to debate this issue with Commerce again and, in fact, in its preliminary determination Commerce gives the impression that it did not seriously take up the legal issues of one, the proper interpretation of the anticircumvention provision at issue and two, whether the domestic producers could proceed on the very same anticircumvention petition which Commerce had rejected previously. The rejection of the anticircumvention petition became final when the domestic producers did not perfect their appeal of the final scope determination, which included the decision not to address scope under the anticircumvention provisions.[4]

The entire background of this action gives the impression that Commerce is trying to relieve the domestic producers of the legal consequences of their choices.[5] Some of those choices were clearly strategic, others were either strategic or simple errors, but the rules must be the same for all parties. If the domestic producers have proof of circumvention they may be able to address such harm through the filing of a new petition. The domestic producers attempted maneuvers to revive a petition, the rejection of which has become final, will not be successful here.

Of course, this maneuver has been successful at Commerce, which has created the very unusual circumstance against which the court considers the economic harm evidence presented. The court finds this case to be outside the norm. This is the very type of situation which is intended

---

[4] Although Commerce may correct its errors even after a final determination, the court found in *Wheatland Tube* that there was no error.

[5] The court does not reach the issue of whether this is the result of Congressional pressure or whether the erroneous conclusions plaintiffs cite in the preliminary determination demonstrate bias.

to be addressed under 28 U.S.C. § 1581(i). To await the inevitable determination, which may be challengeable under 28 U.S.C. § 1581(c), is to allow a proceeding to go forward which, essentially, already has been determined to be improper. The continued conduct of that proceeding, with the resulting suspension of liquidation, works grave economic harm which cannot be adequately addressed pursuant to 28 U.S.C. § 1581(a-h). Accordingly, the court finds it has jurisdiction to hear this action.

MERITS

The court set forth its views of the statutory scheme in *Wheatland Tube. See* 973 F. Supp. at 162–63. Although the parties have refined their arguments, these refinements are insufficient to affect the essential reasoning of *Wheatland Tube*. The court found the statute clear, but even if there were some ambiguity which might allow for an alternative reasonable view, the court owes little deference to an agency interpretation which is a complete reversal, taken in the midst of litigation. *See Pauley v. Bethenergy Mines, Inc.*, 501 U.S. 680, 698 (1991) (noting that generally "the case for judicial deference is less compelling with respect to agency positions that are inconsistent with previously held views"). The final scope determination was correct, it cannot be changed now.

The parties have presented numerous facts which were not before the court in *Wheatland Tube*, and which could not be considered there because they were not before Commerce prior to the final scope determination. But, it is the state of the record at the time of the agency decision which determines whether Commerce erred in rejecting the anticircumvention request, *see Böhler-Uddeholm Corp. v. United States*, 946 F. Supp. 1003, 1008 (Ct. Int'l Trade 1996), and without such error the original anticircumvention request cannot be resurrected here. It is the domestic producers' original anticircumvention inquiry request made in 1993, just a few months after the original order, which is the basis for Commerce's new anticircumvention inquiry and it is that same request which Commerce properly rejected and which rejection became final when the scope determination at issue in *Wheatland Tube* was not properly appealed as to Mexican imports.

Just to put matters in perspective, the essence of an anticircumvention investigation involves an analysis based on factors similar to those set forth in *Diversified Products Corp. v. United States*, 6 CIT 155, 572 F. Supp. 883 (1983). In the original investigation of products from Brazil, Korea, Mexico and Venezuela, petitioners could have asked for line or dual certified pipe to be covered, or Commerce could have included it under a *Diversified Products* multi-step inquiry. Commerce specifically raised the issue of coverage of dual certified pipe and petitioners did not pursue it. Dual certified and line pipe were clearly outside the scope of the original order.

A few months later petitioners sought to enlarge the scope of the order under the anticircumvention laws, but Commerce declined to do an an-

ticircumvention analysis under 19 C.F.R. § 353.29(g) because petitioners alleged line pipe or dual certified pipe was substituted for standard pipe, rather than setting forth facts demonstrating circumvention by means of "a minor alteration" under 19 U.S.C. § 1677j(c). Commerce began an ordinary scope investigation instead, applying the procedures set forth in 19 C.F.R. § 353.29(i)(1). Because scope was clear and only standard pipe was covered by the original investigation, Commerce did not perform a *Diversified Products* analysis.[6] *See Torrington v. United States*, Consol. Ct. No. 96–08–01909, Slip Op. 98–8, at 11 (Ct. Int'l Trade Jan. 29, 1998).[7] As explained in *Wheatland Tube*, from the time Commerce first indicated it was not proceeding under 19 C.F.R. § 353.29(g) to determine whether circumvention was occurring by means of a minor alteration until the final scope determination was issued under 19 C.F.R. § 353.29(i), petitioners did not press their anticircumvention claims. 973 F. Supp. at 151–54, 159 n.5.

Whether or not petitioners now can show a minor alteration is irrelevant to this case. From the outset up to the time of the final scope investigation the record revealed that two products existed in the U.S. market,[8] were known to be different products, were understood to differ, *inter alia*, because of different certifications and production methodologies, and that line and dual certified pipe were excluded from the scope of the order. The International Trade Commission never investigated the domestic line pipe industry to determine if it was injured by imports. *See Wheatland Tube*, 973 F. Supp. at 158. All this was the result of the choice petitioners made at the outset. As only the record as it existed up to the time of the final scope determination is relevant, the outcome is as it was in *Wheatland Tube*.

## REMEDY

This court recognizes that granting an injunction is an extraordinary remedy and one that is not granted routinely. *See Weinberger v. Romero-Barcelo*, 456 U.S. 305, 311–12 (1982). The decision is, however, one that is firmly within the court's discretion. *Id.* at 312. The basis for injunctive relief "has always been irreparable injury and the inadequacy of legal remedies." *Id.* (citation omitted). When both the plaintiff and defendant present claims of injury, the court balances the interests of the parties who may be affected by the court's decision. *Id.* Thus, the decision to grant an injunction is by necessity a fact specific determination.

---

[6] Commerce did issue a preliminary determination which also required end-use certification establishing that line and dual certified pipe was not being used as standard pipe, *Certain Welded Non-Alloy Steel Pipe from Brazil, the Republic of Korea, Mexico and Venezuela*, 59 Fed. Reg. 1929, 1929 (Dep't Commerce 1994), but the final scope determination reversed this approach.

[7] Because of the way 19 U.S.C. § 1677j(c) and Commerce regulations are written, if Commerce issues a negative scope determination without doing a *Diversified Products* analysis based on a petition which asks for both an ordinary scope inquiry and an anticircumvention inquiry, the *Diversified Products* analysis may be precluded. Of course, where such a dual petition properly alleges anticircumvention Commerce should perform the analysis before it renders its final scope determination. Here the anticircumvention aspect of the petition was properly rejected. Thus the ordinary scope rules applied.

[8] The two products include many sizes of pipe. Apparently, the primary allegation is that the API 5LA line pipe, a low grade oil line pipe, has been sold for at least one standard pipe use.

50

Plaintiffs have met all the requirements for an injunction. *Wheatland Tube* makes clear that they will succeed on the merits. Commerce's investigation is improper. As noted in the discussion of jurisdiction, *supra*, plaintiffs have demonstrated that they will suffer irreparable harm if the proceeding continues with the attendant suspension of liquidation. The proceedings themselves are costly and should not proceed if they are improper. Because plaintiffs are correct on the merits, the public interest is served by enjoining both the continuation of the proceedings and suspension of liquidation, which are not authorized by statute. Finally, defendant is not legally harmed by the cessation of any illegal investigation. Defendant-intervenors may lose some sales, but they are not entitled to prevent plaintiffs from competing fairly for those sales. Also, it is important that imports from all sources be treated equally and that petitioners' inadvertence in not perfecting the appeal as to Mexican imports of the final scope determination not unfairly disadvantage one source of the product at issue.

In order to put all parties back on equal footing, the most rational course available here is to enjoin the current Commerce proceeding permanently. If the parties remain in disagreement, they may appeal and attempt to have both this case and *Wheatland Tube* decided together. If the appellate court finds that the original anticircumvention request is alive, Commerce, no doubt, will continue its proceeding against all relevant imports, not just Mexican imports. If the appeal is unsuccessful, the imports also will be competing equally again but domestic producers will be left to pursue whatever remedies are available to them through new petitions.