**Slip Op. 08-1**

## UNITED STATES COURT OF INTERNATIONAL TRADE

TIANJIN MAGNESIUM :
    INTERNATIONAL CO., LTD.,
:
                *Plaintiff*,
:

    v. :

UNITED STATES,                         Court No. 07-00427

              *Defendant*, :

    and :

US MAGNESIUM LLC, :

    *Defendant-Intervenor*.

[Motions to Dismiss filed by Defendant and Defendant-Intervenor granted.]

Dated: January 8, 2008

Riggle & Craven (David A. Riggle and David J. Craven), for Plaintiff.

Jeffrey S. Bucholtz, Acting Assistant Attorney General; Michael F. Hertz, Deputy Assistant Attorney General; Jeanne E. Davidson, Director, and Patricia M. McCarthy, Assistant Director, Commercial Litigation Branch, Civil Division, U.S. Department of Justice (David S. Silverbrand); William Kovatch, Office of the Chief Counsel for Import Administration, U.S. Department of Commerce, of Counsel; for Defendant.

King & Spalding, LLP (Stephen A. Jones, Jeffrey M. Telep, and Elizabeth M. Duall, for Defendant-Intervenor.

**OPINION**

RIDGWAY, Judge:

In this action, Plaintiff Tianjin Magnesium International Company, Ltd. ("TMI") contests

the decision of the U.S. Department of Commerce rescinding the deferral of the administrative

review of TMI's entries under the antidumping duty order on Pure Magnesium from the People's

Republic of China for the period of May 1, 2006 through April 30, 2007.  According to Commerce,

such a request must be denied where a petitioner objects, as US Magnesium LLC ("USM") did here.

TMI maintains that USM's objection was untimely, and that Commerce thus erred in rescinding the

deferral (which the agency had granted earlier, at TMI's request).

TMI seeks to enjoin the ongoing administrative review of its entries, invoking the Court of

International Trade's residual jurisdiction under 28 U.S.C. § 1581(i) (2000).[1]  *See* Tianjin

Magnesium International Co., Ltd. Memorandum in Support of the Motion for a Temporary

Restraining Order and Preliminary Injunction ("Pl.'s PI Brief"); *see also* Tianjin Magnesium

International Co., Ltd.'s Memorandum Response to the Motions to Dismiss of the Defendant and

Defendant-Intervenor ("Pl.'s Response Brief").

Pending before the Court are Motions to Dismiss filed by both the Government and USM.

The Government and USM argue that jurisdiction under § 1581(i) is not available here, because TMI

would have adequate remedies in an action brought under 28 U.S.C. § 1581(c) after the

administrative review is concluded, if TMI is dissatisfied with the final results.  The Government

and USM further contend that this matter is not yet ripe.  *See* Defendant's Memorandum in Support

of Its Motion to Dismiss and Opposition to Plaintiff's Motion for a Temporary Restraining Order

("Def.'s Brief"); US Magnesium's Memorandum in Support of Its Motion to Dismiss Plaintiff's

Complaint and in Opposition to Plaintiff's Motions for Preliminary Injunction and Temporary

Restraining Order ("Def.-Int.'s Brief"); Def.'s Reply in Support of Its Motion to Dismiss ("Def.'s

---

[1]All statutory citations herein are to the 2000 edition of the United States Code.

Reply Brief"); US Magnesium's Reply to Tianjin Magnesium International Co. Ltd.'s Response to the Motions to Dismiss ("Def.-Int.'s Reply Brief"); *see also* Defendant's Opposition to Plaintiff's Motion for a Preliminary Injunction ("Def.'s PI Brief"); US Magnesium's Memorandum in Opposition to Plaintiff's Motion for Preliminary Injunction ("Def.-Int.'s PI Brief").

As discussed in detail below, TMI's claims are not ripe for judicial review. If TMI is dissatisfied with the final results of the review, TMI may challenge the results (including Commerce's underlying findings and conclusions) in an action under 28 U.S.C. § 1581(c). Moreover, because the relief available to TMI in such an action would not be "manifestly inadequate," jurisdiction under 28 U.S.C. § 1581(i) will not lie. The Motions to Dismiss filed by the Government and USM must therefore be granted.[2]

## I. **Background**

Commerce issues antidumping duty orders covering imported merchandise sold in the United States below fair value that materially injures, or threatens to injure, a domestic industry. *See* 19 U.S.C. § 1673. Importers of merchandise covered by an antidumping duty order must make a deposit of estimated duties at the time the merchandise is entered. *See* 19 U.S.C. § 1673e(a)(3).

Recognizing that prices and costs change over the course of time, however, Congress has

---

[2]A teleconference hearing on TMI's motion for a temporary restraining order and a preliminary injunction was convened on November 20, 2007. The motion for a temporary restraining order was denied by order dated November 26, 2007. In light of the determination herein that this action must be dismissed, both TMI's pending motion for a preliminary injunction and its motion for oral argument thereon are denied as moot. No party requested oral argument on the motions to dismiss.

References to the transcript of the November 20, 2007 hearing are cited herein as "Tr. at ___."

provided that Commerce shall conduct an annual administrative review of an exporter or producer covered by an antidumping duty order, if a request for such a review is received. *See* 19 U.S.C. § 1675(a)(1). Absent an administrative review, merchandise imported during the previous year (the period of review) is liquidated and duties are assessed at the preexisting rate. *See* 19 C.F.R. § 351.212(c)(1)(i) (2006).[3] On the other hand, if an administrative review is conducted, merchandise imported during the period of review is liquidated and duties are assessed in accordance with the results of the administrative review. *See* 19 U.S.C. § 1675(a)(2)(C). The duty rate established in the administrative review also becomes the new cash deposit rate for future entries of the subject merchandise. *See* 19 U.S.C. § 1675(a)(2)(C).

On May 1, 2007, Commerce published notice of the opportunity to request administrative review of the antidumping duty order on pure magnesium (ingots) from China for the period May 1, 2006 through April 30, 2007. *See* Antidumping or Countervailing Duty Order, Finding, or Suspended Investigation; Opportunity to Request Administrative Review, 72 Fed. Reg. 23,796 (May 1, 2007). Pursuant to that notice, requests for review were filed by TMI (an exporter of magnesium subject to the order), and by Economic Consulting Services, LLC ("ECS"), acting on behalf of USM (the successor in interest to the original petitioner, Magnesium Corporation of America).

In its request for administrative review, TMI included a request that the review of its entries be deferred for one year and consolidated with the next administrative review. *See* 19 C.F.R. §

---

[3]All citations to regulations herein are to the 2006 edition of the U.S. Code of Federal Regulations.

351.213(c) (2006).[4] TMI stated that it had made relatively few shipments during the 2006-2007

period of review, and that combining the review of those shipments with a full year of shipments

in the next administrative review would be most efficient, conserving Commerce's resources as well

as those of the parties.[5]

TMI served its combined request for review/request for deferral on King & Spalding, LLP,

---

[4]Commerce's regulations provide, in relevant part:

The Secretary may defer the initiation of an administrative review, in whole or in part, for one year if:

(i)     The request for administrative review is accompanied by a request that the Secretary defer the review, in whole or in part; and

(ii)    None of the following persons objects to the deferral: the exporter or producer for which deferral is requested, an importer of subject merchandise of that exporter or producer, a domestic interested party and, in a countervailing duty proceeding, the foreign government.

19 C.F.R. § 351.213(c).

[5]TMI's assertion that deferral of its review would permit the costs associated with review to be spread over the entries of two periods is inherently speculative. The argument assumes both that an administrative review of TMI for the 2007-2008 period will be requested before the end of the next anniversary month (May 2008), *and* that Commerce will exercise its discretion to permit the two reviews to be consolidated. *See* Def.'s Brief at 14; Def.'s PI Brief at 5.

TMI posits that it is "likely" that USM will request an administrative review of TMI for the 2007-2008 period, because "TMI is the sole company with a zero antidumping rate." TMI further states that TMI itself "has an incentive to request review in order to establish a 3rd year of no dumping, and from this obtain a revocation . . . [of] the antidumping duty order." *See* Pl.'s PI Brief at 32 n.2. However, TMI has proffered no evidence to support its assumption that, if its review were deferred, Commerce would have consolidated the deferred review into the subsequent review. Although, as discussed below, Commerce initially granted TMI's request for deferral, the agency took no action on TMI's request for consolidation. *See* Initiation of Antidumping and Countervailing Duty Administrative Reviews, Request for Revocation in Part and Deferral of Administrative Review, 72 Fed. Reg. 35,690 (June 29, 2007).

the law firm which was then representing USM in litigation before this court arising out of the previous administrative review of the same antidumping duty order.[6]  However, TMI did not serve ECS, which had filed the request for review on behalf of USM some five days earlier.  Nor did TMI serve USM directly.[7]

Commerce's regulations permit the agency, in its discretion, to defer the initiation of an administrative review, provided that (among other things), there is no timely objection by "a domestic interested party."  *See* 19 C.F.R. § 351.213(c).[8]  On June 20, 2007, TMI filed a letter with Commerce stating that "there has been no objection to deferral filed," and urging Commerce to grant its request for deferral.  TMI served a copy of its June 20 letter on ECS[9] – albeit at an address that ECS had vacated in August 2006, rather than at ECS's current address (which was indicated on the request for review that ECS had filed three weeks earlier on behalf of USM).  That error delayed ECS's receipt of TMI's June 20 letter for several days.

---

[6]According to Commerce's regulations, a party requesting an administrative review "must serve a copy of the request by personal service or first class mail . . . on the petitioner . . . . " *See* 19 C.F.R. § 351.303(f)(3)(ii).  As noted above, any request for deferral must "accompan[y] the related request for review.  *See* n.4, *supra* (*quoting* 19 C.F.R. § 351.213(c)(i)).

[7]When TMI filed its combined request for administrative review/request for deferral on May 30, 2007, TMI had not yet received its service copy of the request for administrative review that ECS had filed five days earlier on behalf of USM.  TMI received USM's request the following day – May 31, 2007.  Thereafter, TMI served its future submissions on ECS.  However, TMI never served its combined request for administrative review/request for deferral on either ECS or USM.

[8]Commerce's regulations require that an objection to a request for deferral be filed "within 15 days after the end of the anniversary month in which the administrative review is requested" (in this case, the month of May).  19 C.F.R. § 351.213(c)(2).

[9]The envelope addressed to ECS was actually postmarked June 21, 2007.

ECS and USM first learned of TMI's request for deferral on June 27, 2007, when ECS received TMI's June 20 letter. Although TMI had served King & Spalding with its combined request for review/request for deferral, the law firm at that time had not entered an appearance in the proceeding on behalf of USM. The law firm therefore did not examine TMI's request for review/request for deferral when it was received, and, indeed, did not even realize that a request for deferral had been made.[10] Nor did the law firm realize at the time that TMI had failed to serve the request for review/request for deferral on either ECS or USM.[11]

On June 28, 2007, ECS responded to TMI's June 20 letter, voicing USM's vehement objection to the deferral. USM's objection criticized TMI's failure to serve its combined request for review/request for deferral on ECS (USM's lead representative in the administrative review at issue, as well as in prior reviews), and explained that – as a result – ECS and USM had learned of TMI's request for deferral only very recently. USM urged Commerce either to reject TMI's request for deferral as improperly served, or, in the alternative, to grant USM leave to late-file its objection.[12]

---

[10]TMI's combined request for review/request for deferral was in the form of a two and one-half page letter, with a subject line that read "Pure Magnesium From the People's Republic of China; A-570-832; *Request for § 751 Administrative Review* of Exports by Tianjin Magnesium International, Co., Ltd." (Emphasis added.) The caption line of TMI's submission thus did not reveal that the document included a request for deferral.

[11]King & Spalding first became aware that TMI had requested deferral of its review, and that TMI had not served its request for review/request for deferral on either ECS or USM, only on June 27, 2007, when the law firm received a telephone call from ECS, after ECS received TMI's June 20, 2007 letter. *See* Def.-Int.'s PI Brief at 12; Tr. at 56.

[12]USM was concerned about the commercial impact of deferring the administrative review of TMI's entries. As outlined above, under the United States' antidumping scheme, antidumping duties are assessed retroactively, and entries made within the period of review are liquidated in

TMI responded to USM's objection to the deferral of TMI's review with a ten-page letter memorandum, filed on July 6, 2007, disputing USM's claim that it had not been properly served with TMI's combined request for review/request for deferral.  In its submission, TMI argued, *inter alia*, that it had properly served USM through its "legal representative," and that TMI's counsel could not ethically serve ECS – a lay party – without specific direction from Commerce.[13]

In the meantime, Commerce's June 25, 2007 notice of the initiation of an administrative review of pure magnesium for Shanxi Datuhe Coke & Chemicals Co., Ltd. ("Datuhe") – the other

accordance with the final results of the administrative review.  In addition, the administrative review sets the cash deposit rates for producers/exporters going forward – and cash deposit rates are important in providing provisional relief to the domestic industry.  *See* Tr. at 57-59, 113-16; *see generally* Decca Hospitality Furnishings, LLC v. United States, 30 CIT ____, ____, 427 F. Supp. 2d 1249, 1251-52, 1257-58 (2006) (providing general overview of, *inter alia*, administrative review process, as well as explanation of cash deposit rates and duty rates at liquidation (*i.e.*, the final assessment and collection of duties), and the differences between the two).

Decca addresses some of the practical implications that cash deposit rates have for importers. *See*, *e.g.*, Decca, 427 F. Supp. 2d at 1257-58.  Needless to say, they have practical implications for domestic producers as well.  TMI currently has a zero cash deposit rate, based upon the results of the prior administrative review.  Accordingly, TMI presently is not paying any estimated duties on entries of pure magnesium that it exports.  That cash deposit rate will remain in place until the administrative review at issue here is concluded.  And, if that review were deferred, TMI's zero cash deposit rate would remain in effect until the next administrative review is concluded, which could be as late as November 2009.  USM is also concerned that additional Chinese producers might seek to "funnel" their U.S. exports through TMI, to take advantage of TMI's zero cash deposit rate.  *See* Def.-Int.'s PI Brief at 6, 23-25; Def.-Int.'s Reply Brief at 12-13; Tr. at 57-59.

[13]TMI apparently never actually consulted, or sought the advice or opinion of, any relevant legal ethics or disciplinary authorities.  *See* Tr. at 18-19 (court observes that it does not "see any indication that [counsel for TMI] actually sought advice" from relevant ethics or disciplinary authorities; counsel for TMI states that "it's fair to say that not a lot of consideration was given" to who to serve in order to effect service on USM).  *Compare*, *e.g.*, Shakeproof Indus. Prods. Div. v. United States, 104 F.3d 1309, 1311 (Fed. Cir. 1997) (seeking to disqualify law firm from representing respondent in administrative review on grounds of conflict of interest, petitioner sought opinions/rulings from D.C. Bar Legal Ethics Committee and Commerce Department's Office of General Counsel).

Chinese entity for which review had been requested – had been published in the Federal Register on June 29, 2007. The same notice also announced the deferral of the initiation of the administrative review of TMI. *See* Initiation of Antidumping and Countervailing Duty Administrative Reviews, Request for Revocation in Part and Deferral of Administrative Review, 72 Fed. Reg. 35,690 (June 29, 2007). But on June 25, 2007 – the date of Commerce's notice – Commerce was not yet aware of USM's objection, because it had not yet been filed.

Over the course of the three months that followed, TMI contacted Commerce twice to inquire about the status of USM's objection to the deferral of TMI's review. Each time, TMI was advised that Commerce had taken no action on the objection.[14] In the meantime, although the objection remained pending before the agency, TMI took no measures to prepare for the possibility that Commerce would rescind the deferral of TMI's review.[15]

On September 26, 2007, Commerce issued a memorandum granting USM an extension of time for the filing of its objection to TMI's request for deferral, based on the agency's determination that "TMI did not properly serve ECS, the lead firm representing the domestic industry, with its request for review and deferral."[16] Commerce further determined that, in light of USM's objection,

---

[14]*See* Pl.'s Response Brief at 3 n.2; Tr. at 71-72.

[15]*See* Pl.'s Response Brief at 3 (stating that TMI "relied on the original decision to defer and took no action to prepare for review" prior to September 26, 2007); Pl.'s PI Brief at 5 (same); Tr. at 33, 36, 70 (same).

[16]*See* 19 C.F.R. § 351.302(b) (authorizing Commerce to extend any deadline for good cause, unless expressly precluded by statute); *see also* Am. Farm Lines v. Black Ball Freight Serv., 397 U.S. 532, 539 (1970) (noting that "[i]t is always within the discretion of . . . an administrative agency to relax or modify its procedural rules adopted for the orderly transaction of business before it when in a given case the ends of justice require it") (citations omitted).

the agency's regulations required that TMI's request for deferral be denied. Commerce therefore rescinded the deferral of TMI's review. *See* Commerce Department Memorandum, "Granting Petitioner An Extension of Time to File An Objection to Respondent's Deferral Request" (Sept. 26, 2007).[17]

The next day, Commerce issued its standard questionnaire to TMI, a little more than three weeks after the agency had issued the questionnaire to Datuhe on September 4, 2007.[18] Commerce's regulations allow respondents at least 30 days to respond to the full questionnaire, which consists of four sections (A, C, D, and E). *See* 19 C.F.R. § 351.301(c)(2)(iii). However, Commerce is authorized to grant extensions of time. Datuhe requested a one-week extension to respond to section

---

[17]As TMI correctly points out, Commerce has not yet published official notice of the administrative review of TMI's entries. But it is undisputed that TMI was promptly notified of the rescission of the deferral of its review, and that TMI also received Commerce's questionnaire. Further, the only deadlines in an administrative review that are based on the date of publication of a notice of initiation are for filing of a request to examine absorption of duties, a withdrawal of a request for review, and a request for verification. None of those deadlines affects any action to be taken by TMI. The lack of published notice of the review of TMI's entries thus has no practical significance for TMI. *See* Def.'s Brief at 20; Def.'s PI Brief at 10-12; Def.-Int.'s Reply Brief at 14-15; Def.-Int.'s PI Brief at 3 & n.2, 17-18.

The Government has advised that, in accordance with 19 U.S.C. § 1516a(a)(2)(A) and to remedy any procedural irregularities, Commerce intends to publish notice of the administrative review of TMI's entries in the Federal Register upon resolution of this case. *See* Def.'s Brief at 5, 13, 19; Def.'s PI Brief at 2, 11; *see also* Tr. at 47-48 (counsel for Government explains that publication is being deferred due to concerns that such action by Commerce would be arguably improper, absent direction by the court, while litigation is pending).

[18]There is no statutory or regulatory requirement that Commerce publish notice of the initiation of an administrative review before issuing questionnaires. Instead, the regulations provide that "[a]fter receipt of a timely request for a review, . . . the Secretary will: . . . (2) *Before or after publication of notice of initiation of the review*, send to appropriate interested parties . . . questionnaires requesting factual information for the review." 19 C.F.R. § 351.221(b)(2) (emphasis added).

A of the questionnaire.  Commerce granted that request.  TMI initially requested an 18-day

extension to respond to the same section A questionnaire, and received a two-week extension.  TMI

then requested another extension of an additional week, which Commerce granted.  TMI therefore

had a total of 42 days – a full two weeks more than Datuhe – to respond to Commerce's section A

questionnaire.

Datuhe requested a three-week extension to respond to sections C and D of the questionnaire,

and was granted two weeks.  TMI too initially requested an extension of three weeks, and – like

Datuhe – was granted two weeks.  TMI then requested a further extension of an additional week,

which Commerce granted as well.  Finally, TMI requested yet another extension of 15 days, which

Commerce again granted.[19]  TMI thus had a total of 75 days – more than three weeks  beyond what

_____

[19]Pointing to the letter in which Commerce granted this third, 15-day extension of time for TMI's response to the sections C and D of the agency's questionnaire, TMI asserts that "Commerce has . . . orally indicated that it is not inclined to issue further extensions, and has stated in its written grant of extension that it may not grant extensions in the future."  *See* Pl.'s Response Brief at 6 n.5 (*citing* Letter to Counsel for TMI from Commerce (Nov. 28, 2007)).

TMI provides no information as to the date, context, or participants in the conversation to which it alludes.  However, TMI has simply misread the letter that it cites.  In that letter, Commerce cautioned only that any further extensions of time for the filing of TMI's response to sections C and D of the questionnaire might "result in . . . the rejection of future extension requests":

> The Department is granting TMI a fifteen-day extension until **C.O.B. December 11, 2007**, for its Section C and D questionnaire response.  All responses should be filed in accordance with the filing requirements set forth in our original questionnaire.  Additionally, any *further* extension requests *for this questionnaire* [*i.e.*, the sections C and D questionnaire] should be considered in the context of the schedule for this review and may result in less time being provided for future responses or the rejection of future extension requests.

Letter to Counsel for TMI from Commerce (Nov. 28, 2007) (boldface text in original; other emphases added).  In fact, TMI sought no further extensions of time, and filed its sections C and D questionnaire response on December 11, 2007.  Commerce's letter thus says nothing about the

Datuhe had – to respond to sections C and D of Commerce's questionnaire.

In sum, to date Commerce has granted all of TMI's requests for extensions of time to respond to the agency's questionnaire. Indeed, TMI has had significantly more time to file its questionnaire responses than has Datuhe, the other respondent in the investigation.

In addition to filing its questionnaire responses, TMI also must provide Commerce with certain other information for the agency's antidumping analysis. Because China is classified as a non-market economy, Commerce applies a "factors of production" methodology to determine normal value for purposes of its analysis. *See* 19 U.S.C. § 1677b(c). Under that methodology, Commerce solicits information from respondents concerning the quantities of various inputs consumed in producing the subject merchandise, and then uses surrogate values from a similar, market economy country to value those inputs. *See* 19 C.F.R. § 351.408.

The deadline for a respondent's submission of surrogate value information is 40 days after Commerce's publication of the preliminary results of its investigation, however. And Commerce has not yet even issued the preliminary results in this action.[20] Moreover, that deadline is a matter of regulation, not statute, and thus may be extended by Commerce for good cause. 19 C.F.R. § 351.302(b). Accordingly, if it needs additional time, TMI may seek an extension of time to file its submission. To date, it has made no such request.[21]

_____

agency's willingness to grant TMI additional extensions of time in the future.

[20]According to the Government, "[p]ublication of the preliminary results [of an investigation] in the Federal Register usually occurs within a week of [their] issuance." *See* Def.'s Reply Brief at 9 n.4.

[21]For several reasons, TMI's burden in the review at issue can reasonably be expected to be less onerous than that borne by other respondents in similar cases. As TMI has emphasized, it had

At present, the deadline for issuance of Commerce's preliminary determination in this matter is January 31, 2008. However, that deadline can be extended to May 30, 2008. The current estimated deadline for issuance of the final determination is June 4, 2008; but that deadline also can be extended, to approximately December 1, 2008.

TMI asserts that it is very likely that the deadlines for issuance of Commerce's preliminary and final results will be extended.[22] If Commerce in fact extends those deadlines, TMI actually will have *more* time in the review than the three months that TMI assertedly "lost" between Commerce's initiation of the administrative review at the end of June 2007 and Commerce's rescission of the deferral of TMI's entries on September 26, 2007.[23]

---

few sales of pure magnesium to the United States during the review period. And there are relatively few factors of production for which surrogate value information is required. Further, TMI submitted detailed information on its factors of production in the prior administrative review. Moreover, TMI is also participating in the concurrent administrative review of the antidumping order on magnesium metal from China. *See* Initiation of Antidumping and Countervailing Duty Administrative Reviews and Request for Revocation in Part, 72 Fed. Reg. 29,968 (May 30, 2007). TMI is developing for that proceeding much of the same information that is required for the review at issue here, and for the same period of time.

[22]*See* Pl.'s Response Brief at 5 & n.4 (stating that "it is likely the review will be extended regardless of the issue before the court"; "It is typical for Commerce to extend the time for review, especially for [non-market economy] cases . . . . For example, [in] the previous review in this matter the preliminary results were extended."); Tr. at 108 (counsel for TMI explains that "typically the Commerce Department extends [the deadlines for issuance of the preliminary and final results in] these cases. To give you an example, in the previous review of this case, where there was only one respondent, . . . the [deadline for] the preliminary [results] was pushed out to the full 365 days and [the deadline for] the final result[s] was pushed out to the full extent as well so there were extensions to the full extent of the law in that case. I would anticipate that in this case even without this matter, there will be an extension . . . . "). *But see* Tr. at 113 (counsel for USM disputes TMI's assertion that Commerce "typically" extends deadlines in such cases).

[23]*Cf*. PAM, S.p.A. v. United States, 463 F.3d 1345, 1349 (Fed. Cir. 2006) (in action based on a domestic producer's failure to serve a request for administrative review on respondent foreign exporter PAM, emphasizing that "the *total* amount of additional time Commerce granted to PAM

On November 13, 2007 – approximately seven weeks after Commerce rescinded the deferral of TMI's administrative review and issued a questionnaire to TMI – TMI commenced the instant action.[24] TMI challenges Commerce's decision to grant USM an extension of time for the filing of its objection to TMI's request for deferral, as well as the agency's resulting rescission of the deferral of TMI's review, without publishing Federal Register notice of the withdrawal of the deferral or a new notice of initiation of review, and (according to TMI) without affording it prior notice and opportunity to comment.[25]

---

[for the filing of its questionnaire responses] . . . far *exceeded* the 17 days PAM lost due to the lack of service" by the domestic producer) (*cited in* Dixon Ticonderoga Co. v. United States, 468 F.3d 1353, 1356 (Fed. Cir. 2006)).

[24]*See* Tr. at 73-74 (counsel for TMI explains why instant action, seeking emergency injunctive relief – which was triggered by events in late September 2007 – was not filed till mid-November 2007).

[25]Specifically, Count I of Plaintiff's Complaint alleges that Commerce's rescission of the deferral of TMI's administrative review due to TMI's failure to serve its combined request for review/request for deferral on ECS or USM itself (rather than King & Spalding) was arbitrary, capricious, an abuse of discretion, and otherwise not in accordance with law. Count II contends that Commerce abused its discretion, deprived TMI of due process, and acted arbitrarily, capriciously, and otherwise not in accordance with law by failing to provide TMI with notice and opportunity to comment before rescinding the deferral of its review. Count III asserts that Commerce abused its discretion, deprived TMI of due process, and acted arbitrarily, capriciously, and otherwise not in accordance with law when it "informally" initiated a review of TMI and issued a questionnaire, without "officially" withdrawing the notice of deferral. Count IV of the Complaint alleges that Commerce's "informal" initiation of the review of TMI's entries and the issuance of a questionnaire without first publishing notice of the initiation of the review was arbitrary, capricious, an abuse of discretion, a deprivation of due process, and otherwise not in accordance with law. Finally, Counts V and VI assert, respectively, that the timing of Commerce's initiation of the review deprived TMI of significant time to participate in the review process and that Commerce's rescission of the deferral has forced TMI to expend unnecessary time and money to participate in the review.

## II. **Standard of Review**

The existence of subject matter jurisdiction is a threshold inquiry. *See*, *e.g.*, Steel Co. v. Citizens For A Better Environment, 523 U.S. 83, 94-95 (1998). Where jurisdiction is challenged pursuant to Rule 12(b)(1), "'the burden rests on plaintiff to prove that jurisdiction exists.'" Pentax Corp. v. Robinson, 125 F.3d 1457, 1462 (Fed. Cir. 1997), *modified in part*, 135 F.3d 760 (1998) (*quoting* Lowa, Ltd. v. United States, 5 CIT 81, 83, 561 F. Supp. 441, 443 (1983), *aff'd*, 724 F.2d 121 (Fed. Cir. 1984)); *see also* Norsk Hydro Canada, Inc. v. United States, 472 F.3d 1347, 1355 (Fed. Cir. 2006) (citation omitted); McNutt v. General Motors Acceptance Corp., 298 U.S. 178, 189 (1936).

As detailed below, TMI has failed to carry its burden.

## III. **Analysis**

The ultimate question presented by TMI's complaint is whether a court may undertake interlocutory review of a procedural determination made by the Commerce Department in the context of an ongoing administrative proceeding. Significantly, TMI is not here seeking judicial review of a final agency action under 28 U.S.C. § 1581(c). Rather, TMI is attempting to halt in its tracks an ongoing administrative review of an antidumping duty order by invoking the court's residual jurisdiction pursuant to 28 U.S.C. § 1581(i). However, jurisdiction under § 1581(i) is available only when adequate relief cannot be obtained pursuant to any other provision of the statute. Further, to be ripe for judicial review, agency action generally must be final.

TMI is not arguing that it is not subject to administrative review for the period at issue.

Indeed, TMI itself *requested* the review of its entries.[26]  Instead, TMI is (in essence) disputing the

*timing* of that review.  Thus, contrary to TMI's assertions, this case is critically different from

Carnation Enterprises, Asocoflores, and similar cases where jurisdiction under § 1581(i) has been

successfully invoked to obtain judicial review of plaintiffs' claims that Commerce fundamentally

lacked any authority to initiate the agency proceedings at issue.  *See* Pl.'s PI Brief at 6 (*citing*

Carnation Enterprises Pvt. v. U.S. Dep't of Commerce, 13 CIT 604, 719 F. Supp. 1084 (1989);

Asociacion Columbiana de Exportadores de Flores (Asocoflores) v. United States, 13 CIT 584, 717

F. Supp. 847 (1989), *aff'd on other grounds*, 903 F.2d 1555 (Fed. Cir. 1990)).[27]

---

[26]*See*, *e.g.*, Pl.'s PI Brief at 2 (stating that, in May 2007, "Commerce received requests for review . . . from TMI and from US Magnesium LLC").  As note 5 explains above, TMI "has an incentive to request review in order to establish . . . [three years] of no dumping, and from this obtain a revocation . . . [of] the antidumping duty order."  *See* Pl.'s PI Brief at 32 n.2; 19 C.F.R. § 351.222(b)(2)(i) (providing that "[i]n determining whether to revoke an antidumping duty order in part, [Commerce] will consider:  (A) Whether one or more exporters or producers covered by the order have sold the merchandise at not less than normal value for a period of at least three consecutive years").

[27]*See* Carnation Enterprises, 13 CIT at 609-10, 719 F. Supp. at 1089 (holding (i) jurisdiction available to challenge initiation of administrative reviews, explaining that "[u]nlike the unquestionably valid administrative reviews in Koyo Seiko, the reviews [in the case at bar] . . . are alleged to have become illegal because of errors found in the original [underlying antidumping duty] order"); Asocoflores, 13 CIT at 585-86, 717 F. Supp. at 848-49 (holding (i) jurisdiction available to challenge initiation of administrative review, where plaintiffs alleged that domestic producers' request for review failed to comply with applicable regulations).

Indeed, several recent analyses have concluded that jurisdiction under § 1581(i) does not lie to review even the *initiation* of a trade remedy proceeding.  *See*, *e.g.*, Gov't of the People's Republic of China v. United States, 31 CIT ____, ____, 483 F. Supp. 2d 1274, 1281 (2007) ("PRC") (dismissing for lack of jurisdiction under § 1581(i) action challenging initiation of countervailing duty proceeding); Tokyo Kikai Seisakusho, Ltd. v. United States, 29 CIT ____, 403 F. Supp. 2d 1287, 1293-98 (2005) ("TKS I") (dismissing for lack of jurisdiction action brought under § 1581(i) challenging Commerce's initiation of "changed circumstances review").  *See also* Hylsa, S.A. de C.V. v. United States, 21 CIT 222, 228, 960 F. Supp. 320, 325 (1997), *aff'd*, 135 F.3d 778 (Fed. Cir. 1998) (dismissing for lack of jurisdiction under § 1581(i) action challenging initiation of

Moreover, TMI does not dispute that – if a timely objection is filed – Commerce is required to deny a request for deferral. *See* 19 C.F.R. § 351.213(c)(1) (stating that deferral may be granted only if "[n]one of the following persons objects . . . "); Def.'s Reply Brief at 7-8; Def.-Int.'s Brief at 1-2, 9-10; Def.-Int.'s Reply Brief at 6; Def.-Int.'s PI Brief at 2-3, 4-5, 11. Nor does TMI dispute that Commerce has the discretion to deny a request for deferral even in the absence of an objection. *See* 19 C.F.R. § 351.213(c)(1) (stating that "[t]he Secretary *may* defer the initiation of an administrative review . . . ") (emphasis added); Def.-Int.'s Brief at 1-2, 9-10; Def.-Int.'s Reply Brief at 6; Def.-Int.'s PI Brief at 2-3, 4-5.

Distilled to its essence, TMI's claim is that Commerce should not have granted an extension of time for the filing of USM's objection to TMI's request for deferral, because (according to TMI) it properly served its combined request for review/request for deferral by serving King & Spalding. However, agency decisions such as this – the decision to grant a party an extension of time – are fundamentally interim in nature, and are subsumed in and/or superseded by the agency's final determination. *See generally* Def.'s Brief at 10-11.

Further, the nature of the injuries that TMI alleges does not implicate the court's residual jurisdiction. The time and expense required to participate in administrative proceedings generally

anticircumvention inquiry); Int'l Brotherhood of Elec. Workers v. United States, 21 CIT 503 (1997) (dismissing for lack of jurisdiction under § 1581(i) action challenging initiation of changed circumstances review); China Bicycle Co. (Holdings) Ltd. v. United States, No. 95-11-01426 (C.I.T. Dec. 8, 1995) (bench ruling) (holding jurisdiction under § 1581(i) not available in action challenging Commerce determination that petition seeking initiation of trade remedy proceeding was sufficient) (*cited in* Hylsa, 21 CIT at 227, 960 F. Supp. at 324); Timken Co. v. United States, No. 82-6-00890 (C.I.T. Oct. 10, 1986) (holding that Commerce decision to initiate antidumping investigation is interlocutory order not subject to judicial review) (*cited in* Hyundai Pipe Co., Ltd. v. U.S. Int'l Trade Comm'n, 10 CIT 695, 697, 650 F. Supp. 174, 176 (1986)).

do not constitute legally cognizable harm.[28]  Thus, TMI's only potential legally cognizable injury would be if the time that it asserts it "lost" between Commerce's initiation of the administrative review in late June 2007 and Commerce's rescission of the deferral of the review of TMI's entries in late September 2007 prejudiced its participation in the review process, resulting in a higher dumping margin in the final results of the review.  *See generally* Def.-Int.'s Reply Brief at 3.

As discussed below, appropriate relief will be available to TMI through an action brought under 28 U.S.C. § 1581(c) upon Commerce's issuance of the final results of the administrative review.  This action therefore must be dismissed for lack of subject matter jurisdiction.[29]

---

[28]Moreover, as noted above, TMI does not dispute that it is subject to administrative review for the period at issue.  Thus, the only time and expense that TMI can be heard to complain of is the incremental time and expense that TMI contends it would have saved if the review here at issue were to be combined with the subsequent administrative review.  *See* Def.-Int.'s Brief at 20; Def.-Int.'s PI Brief at 22-23.  As explained above, however, even if the review at issue here were deferred, Commerce would not necessarily consolidate it into the subsequent review.  *See* n.5, *supra*.  TMI's allegations of potential savings are thus, by definition, speculative.

[29]TMI asserts broadly that, in Nippon, "the Federal Circuit has declared that the issue of jurisdiction and the merits are inextricably intertwined, and . . . [that] jurisdiction should be resolved while considering and deciding the merits."  Pl.'s Response Brief at 7-8 (*citing* Nippon Steel Corp. v. United States, 219 F.3d 1348, 1351-53 (Fed. Cir. 2000)); *see also* Pl.'s PI Brief at 7-8 (same).  But TMI errs in both its reading and its application of that case.

Contrary to TMI's implication, Nippon did not hold that jurisdiction and the merits of a case are *always* intertwined.  Indeed, as the Court of Appeals noted, that is an "unusual situation."  *See* Nippon, 219 F.3d at 1353.  Here, in contrast to Nippon, jurisdiction and the merits of the case are quite distinct.  As illustrated below, in this case the issue of jurisdiction may be resolved without reaching (much less resolving) any of TMI's arguments on the merits, such as whether TMI's counsel were ethically precluded from serving TMI's combined request for review/request for deferral on ECS, whether TMI properly effected service on USM by serving King & Spalding, whether Commerce properly granted an extension of time to USM for the filing of its objection to TMI's request for deferral, whether USM was required to demonstrate prejudice resulting from any lack of notice of the request for deferral (and, if so, whether prejudice was demonstrated), whether TMI was entitled to notice and an opportunity to comment before the deferral of its review was rescinded (and, if so, whether TMI had that opportunity), whether Commerce properly rescinded the

A.  The Availability of Adequate Relief Under § 1581(c)

Section 1581(i) is a broad – but finite – grant of residual jurisdiction.  *See* Miller & Co. v.

United States, 824 F.2d 961, 963 (Fed. Cir. 1987) (describing 28 U.S.C. § 1581(i) as "a broad

residual jurisdiction provision").  The statute provides, in relevant part, that "[t]his subsection shall

not confer jurisdiction over an antidumping or countervailing duty determination which is

reviewable . . . under [19 U.S.C. § 1516a]."[30]  *See* 28 U.S.C. § 1581(i).  *Accord* H.R. Rep. No. 96-

1235, at 33, 47-48 (1980), *reprinted in* 1980 U.S.C.C.A.N. 3279, 3745, 3759-60 (stating that "any

*preliminary administrative action*, which, in the course of [a] proceeding, will be, directly or by

implication, *incorporated in or superseded by any such* [*final agency*] *determination*, is reviewable

exclusively as provided in [19 U.S.C. § 1516a]") (emphases added).[31]  Thus, a litigant may not

invoke jurisdiction under § 1581(i) "when jurisdiction under another subsection of § 1581 is or

could have been available, unless the remedy provided under that other subsection would be

*manifestly inadequate*."  Miller & Co., 824 F.2d at 963 (emphasis added) (citations omitted); *see*

---

deferral, and the ramifications for TMI (if any) of the lack of Federal Register notice of Commerce's actions.

[30]In turn, 19 U.S.C. § 1516a provides in relevant part that, within 30 days after the date of Federal Register publication of the final results of an administrative review, a party to the proceeding "may commence an action in the United States Court of International Trade by filing a summons, and within thirty days thereafter a complaint . . . contesting any factual findings or legal conclusions upon which the determination is based."  19 U.S.C. § 1516a(a)(2)(A).

[31]*See also* H.R. Rep. No. 98-1156, at 178 (1984), *reprinted in* 1984 U.S.C.C.A.N. 5220, 5295 (stating that 19 U.S.C. § 1516a "[e]liminates all interlocutory judicial reviews by the U.S. Court of International Trade during the course of . . . [antidumping duty] investigations.  All challenges to agency determinations would be combined and reviewable by the court after final agency action has been taken.").

*also* JCM, Ltd. v. United States, 210 F.3d 1357, 1359 (Fed. Cir. 2000); Norcal/Crosetti Foods, Inc.

v. United States, 963 F.2d 356, 359 (Fed. Cir. 1992).

TMI has failed to demonstrate that adequate redress will not be available in an action brought

under 28 U.S.C. § 1581(c) challenging the final results of Commerce's administrative review of

TMI's entries.  If those final results impose an antidumping duty rate on TMI that TMI believes was

negatively affected by Commerce's decision to rescind the deferral of its review or by TMI's

inability to provide necessary information to the agency within the time allowed, TMI may file a

timely summons and complaint following Federal Register publication of the final results, and bring

an action pursuant to § 1581(c) challenging those results and seeking judicial review of decisions

made by Commerce during the course of the review.  *See generally* Def.-Int.'s Reply Brief at 2, 8;

*see also*, *e.g.*, Gov't of the People's Republic of China v. United States, 31 CIT ____, ____, 483 F.

Supp. 2d 1274, 1281 (2007) ("PRC").

In such an action, TMI would be entitled to "contest[ ] any factual findings or *legal*

*conclusions upon which* [*Commerce's*] *determination is based*" – including the statutory and

regulatory bases for Commerce's initiation of the administrative review, as well as the agency's

methodological choices in the conduct of the review, with the potential remedy of remand to the

agency.  *See* 19 U.S.C. § 1516a(a)(2)(A) (emphasis added); Miller & Co., 824 F.2d at 964; *see*

*generally* Def.'s Brief at 10.

For example, TMI apparently seeks to challenge Commerce's determination that USM's

objection precluded the agency from deferring the initiation of TMI's administrative review.

Because that determination is a legal conclusion on which the final results of the administrative

review will be based, TMI will have the opportunity to challenge that determination in an action

under 28 U.S.C. § 1581(c) once the administrative review has been completed. And, since judicial

review pursuant to § 1581(c) will afford TMI "manifestly adequate" relief, jurisdiction under §

1581(i) does not lie here. *See generally* Def.'s Reply Brief at 3-4.

TMI argues that the timing of Commerce's rescission of the deferral of TMI's administrative

review has diminished the time available for its participation in the review process. According to

TMI, the relief available in an action under 28 U.S.C. § 1518(c) would be "manifestly inadequate,"

because that "lost" time "can never be recovered or recompensed." *See* Pl.'s Response Brief at 2-3;

*see also id*. at 2, 5; Pl.'s PI Brief at 5, 7, 24, 26, 31.

However, TMI has proffered no evidence that it has suffered any concrete, legally cognizable

harm as a result of the scheduling of the ongoing administrative review. *See generally* Def.'s Brief

at 13; Def.-Int.'s Reply Brief at 3-4. Absent a showing of some actual, cognizable harm that cannot

be adequately remedied by a challenge to the final results at the conclusion of the administrative

review, TMI's broad, generalized assertion that it has "less time" to participate in the administrative

review process than it would have had if Commerce had not initially deferred the review is not

sufficient to establish that the remedy available under 28 U.S.C. § 1581(c) is manifestly inadequate.

*See*, *e.g.*, Pistachio Group of Ass'n of Food Indus. v. United States, 10 CIT 440, 446, 638 F. Supp.

1340, 1344 (1986) (dismissing action where plaintiffs failed to show "the potential for immediate

injury and irreparable harm which would render relief under section 1581(c) manifestly inadequate

and justify the Court's exercise of jurisdiction under 28 U.S.C. § 1581(i)(2)"). There must be some

cognizable, irreparable harm suffered as a result of TMI's purported loss of time before the normal

method of appealing Commerce's final results of review would be rendered manifestly inadequate.

Of course, as discussed above, after the ongoing administrative review is completed, TMI conceivably could conclude that whatever dumping margin it is assigned in the final results is higher than it would have been if TMI had had additional time to provide more (or better) information to Commerce during the review proceedings. But TMI would then be able to bring an action pursuant to 28 U.S.C. § 1581(c) challenging the final results on the grounds that the scheduling of the review deprived TMI of adequate time to fully participate in the review process. And TMI could seek a remand to Commerce to permit TMI to submit additional information for the agency's consideration, or some other appropriate remedy. *See* Tr. at 84-86; Koyo Seiko Co. v. United States, 13 CIT 461, 464-65, 715 F. Supp. 1097, 1100 (1989) (declining to exercise jurisdiction under § 1581(i), reasoning that if – in action challenging final results – court concluded that parties had been deprived of adequate opportunity to participate in proceedings, matter could be remanded to Commerce). TMI has suggested no reason why such a remand (or some comparable remedy) would not be sufficient to redress any asserted possible deprivation of its right to participate fully in the administrative review process. TMI's remedy in an action under 28 U.S.C. § 1581(c) thus would not be "manifestly inadequate."[32]

---

[32]In Koyo Seiko, the plaintiffs sought to enjoin an ongoing administrative review of an antidumping duty order after Commerce denied their requests for a 60-day extension of time to digest and comment on a voluminous administrative record. *See generally* Koyo Seiko, 13 CIT at 462-63, 715 F. Supp. at 1098-99. The agency had denied the requests for additional time (after granting one 30-day extension), citing its commitment to clearing its backlog of administrative reviews and to completing new reviews in a timely manner. *Id*., 13 CIT at 462, 715 F. Supp. at 1099. The court dismissed the action, ruling that jurisdiction under § 1581(i) did not lie because the plaintiffs' remedy in a challenge under § 1581(c) to the final results of the administrative review would not be "manifestly inadequate." *Id*., 13 CIT at 463, 715 F. Supp. at 1099. The court

TMI also argues that "[i]f the review is not deferred, TMI will be faced with the time and expense of . . . [participating in the review process]," and that such time and money "can never be recovered, even should a court subsequently find that deferral was improper." *See* Pl.'s PI Brief at 27; *see also id.* at 5-6, 7, 27, 31; Pl.'s Response Brief at 2, 3 n.1. TMI asserts that this fact too renders the relief available in an action under 28 U.S.C. § 1581(c) manifestly inadequate. *But see* Def.'s Brief at 10; Def.-Int.'s Reply Brief at 5-6.

TMI cites TKS II for the proposition that the time and expense of participating in a trade remedy proceeding may constitute irreparable harm. *See* Pl.'s Response Brief at 3 n.1 (*citing* Tokyo

_____

emphasized that, in such an action, the court could "remand th[e] matter for further consideration by [Commerce] if it finds that plaintiffs were denied adequate opportunity to fully participate in the annual [administrative] review proceeding." *Id.*, 13 CIT at 464, 715 F. Supp. at 1099.

The facts of Koyo Seiko closely parallel those of this case in many respects, save one. In Koyo Seiko, Commerce had *denied* the requested extension of time. In contrast, Commerce has *granted* every extension of time that TMI has sought to date. The result in Koyo Seiko – dismissal for want of jurisdiction – is all the more appropriate here.

Jurisdiction under § 1581(i) has similarly been declined in other cases involving challenges to agency decisions that were essentially procedural, interim, preliminary, and/or interlocutory. *See*, *e.g.*, Abitibi-Consol. Inc. v. United States, 30 CIT ____, 437 F. Supp. 2d 1352 (2006) (action challenging Commerce's respondent selection determinations in ongoing administrative review of antidumping duty order); NSK Ltd. v. United States, 28 CIT 1600, 350 F. Supp. 2d 1128 (2004) (action challenging Commerce's model-matching methodology in ongoing administrative review of antidumping duty order); Macmillan Bloedel Ltd. v. United States, 16 CIT 331 (1992) (action challenging Commerce's decision not to investigate whether plaintiff should be excluded from countervailing duty order that might result from ongoing countervailing duty proceeding); PPG Indus., Inc. v. United States, 2 CIT 110, 525 F. Supp. 883 (1981) (action challenging Commerce's refusal to convene disclosure conference in ongoing administrative review of antidumping duty order). *See also* Shakeproof Indus. Prods., 104 F.3d at 1313 (in appeal of dismissal of action under § 1581(i) where petitioner sought to disqualify law firm from representation of respondent in ongoing administrative review of antidumping duty order, expressing "serious doubts that judicial review of the disqualification issue would be manifestly inadequate if it were postponed until Commerce's final decision" in the administrative review").

Kikai Seisakusho, Ltd. v. United States, 31 CIT ____, 473 F. Supp. 2d 1349 (2007) ("TKS II")).

However, TMI's reliance is misplaced. *See generally* Def.-Int.'s Reply Brief at 4-6.

TKS II involved the final results of a "changed circumstances" review, in which, *inter alia*,

Commerce stated its intent to reopen a sunset review proceeding in order to reconsider the

revocation of an antidumping duty order. *See* TKS II, 31 at ____, 473 F. Supp. 2d at 1350-51.[33]

---

[33]In TKS II, the plaintiff respondent companies had been subject to an antidumping duty order which had subsequently been revoked as to them, after they received an antidumping duty rate of zero in three successive administrative reviews. *See* TKS II, 31 at ____, 473 F. Supp. 2d at 1351. Commerce conducted a five-year sunset review soon thereafter, and revoked the antidumping duty order entirely at that time. *See id.*, 31 CIT at ____, 473 F. Supp. 2d at 1351. Later, after learning of information developed in a federal court case which indicated that the respondent companies had provided false information to Commerce about sales during a period of review in which they had received a zero rate, Commerce self-initiated a "changed circumstances" review. *See id.*, 31 CIT at ____, 473 F. Supp. 2d at 1352.

At issue in TKS II were the final results of that changed circumstances review. *See* TKS II, 31 CIT at ____, 473 F. Supp. 2d at 1350-51. In the final results, Commerce, *inter alia*, reinstated the antidumping duty order with respect to the respondent companies for the one-year period from the date the order had been revoked as to them to the date the order had been revoked entirely. *See id.*, 31 CIT at ____, 473 F. Supp. 2d at 1352-53. The final results also stated that Commerce had decided to reopen the sunset review, to reconsider the revocation of the antidumping duty order. *See id.*, 31 CIT at ____, 473 F. Supp. 2d at 1353.

In TKS II, the plaintiff respondent companies raised a threshold challenge to Commerce's authority to initiate the changed circumstances review. In addition, they challenged two specific aspects of the results of the review – both Commerce's determination to reinstate the antidumping duty order as to them for the specified one-year period, and Commerce's decision to reopen the sunset review in order to reconsider the revocation of the antidumping duty order. *See* TKS II, 31 CIT at ____, 473 F. Supp. 2d at 1351.

The TKS II court sustained Commerce's initiation of the changed circumstances review, as well as the agency's decision to reinstate the antidumping duty order as to the respondent companies for the one-year period. *See* TKS II, 31 CIT at ____, 473 F. Supp. 2d at 1356-57. However, the court held that Commerce's decision to reopen the sunset review to consider revocation of the antidumping duty order contravened the statute, and was otherwise not in accordance with law. *See id.*, 31 CIT at ____, 473 F. Supp. 2d at 1361-62.

Without expressing a view as to the merits of the observations in TKS II concerning the "time and resources" that the respondent companies would have to spend participating in a reopened sunset review, [34] it is enough to note that the facts of that case are unique. The case is therefore of relatively little guidance here.

Notably, TKS II was an action brought under 28 U.S.C. § 1581(c), challenging the *final results* of a Commerce proceeding – *not* an action contesting the conduct of an ongoing proceeding, brought under § 1581(i), the jurisdictional provision at issue here. *See* TKS II, 31 at ____, 473 F. Supp. 2d at 1351. In fact, the plaintiffs in TKS II had previously attempted to invoke jurisdiction under § 1581(i), in an action seeking to enjoin the initiation of the same changed circumstances review at issue in TKS II. But that action had been dismissed. *See* Tokyo Kikai Seisakusho, Ltd. v. United States, 29 CIT ____, 403 F. Supp. 2d 1287 (2005) ("TKS I").

Further, in TKS II, the plaintiff respondent companies were complaining of administrative proceedings concerning an antidumping duty order that had been *revoked more than four years previously*. In contrast, the administrative review of TMI at issue here was mandated by statute, and

---

[34]It may be significant that TKS II appears to have viewed the plaintiff respondent companies' challenge to this particular aspect of the final results of the changed circumstances review as (in essence) a challenge to an agency determination to initiate a trade remedy proceeding, akin to the claims of the plaintiffs in cases such as Asocoflores and Techsnabexport – cases where the plaintiffs claimed that they were not properly subject to the proceedings there at issue. *See* TKS II, 31 CIT at ____, 473 F. Supp. 2d at 1359-60. In contrast, as discussed above, TMI is not here arguing that it is not subject to administrative review for the period at issue; indeed, TMI itself *requested* the administrative review. Instead, TMI is disputing only the timing of the review.

In addition, it may be significant that "the time and resources [required] to participate in the review" was not the sole hardship that the TKS II plaintiffs asserted. The court also observed that the plaintiff respondent companies asserted that they would "face significant, continuing commercial uncertainty with respect to their . . . sales in the United States." *See* TKS II, 31 CIT at ____, 473 F. Supp. 2d at 1360.

TMI's complaint concerns a delay that occurred (in essence) earlier this year and lasted three months. Moreover, unlike the plaintiffs in TKS II, TMI has not even alleged – much less demonstrated – that Commerce violated any specific statute or regulation in initiating the administrative review of TMI.[35]

Contrary to TMI's claims, the great weight of the authority holds that the expense and risk associated with trade remedy proceedings such as the administrative review at issue here are merely an inherent feature of the retrospective system designed by Congress. *See*, *e.g.*, Hylsa, S.A. de C.V. v. United States, 135 F.3d 778 (unpublished), 1998 WL 56389 at * 4 (Fed. Cir. 1998) (observing that plaintiff "has cited no authority and we are aware of none for the proposition that the cost of responding to inquiries from the Department of Commerce in a scope or circumvention inquiry can constitute irreparable harm for purposes of meeting the requirements of section 1581(i)"); PRC, 31 CIT at ____, 483 F. Supp. 2d at 1283 (explaining that "the cost associated with defending oneself in a trade remedy proceeding is not the type of burden with which this Court concerns itself. Because the 'inconvenience and expense' associated with a trade remedy proceeding 'are inherent in the administrative and judicial review process [they] cannot therefore constitute manifest

---

[35]TMI repeatedly characterizes Commerce's actions in the underlying administrative proceeding as unlawful. *See*, *e.g.*, Pl.'s PI Brief at 7 (charging that rescission of deferral was "an improper and illegal act"), 30 (alleging that "Commerce engaged in unlawful behavior when it changed its petition without notice or opportunity for public comment, without withdrawing its official notice of deferral, and without official initiation of review"); Pl.'s Response Brief at 7 (asserting that ongoing administrative proceeding is "an unlawful review"). At one point, TMI goes so far as to assert that the rescission of the deferral of its review was "*ultra vires*." *See* Pl.'s Response Brief at 8. However, TMI has not identified a specific statute or regulation that Commerce is said to have violated. *See* Tr. at 5 (counsel for USM states that "throughout its complaint and brief [TMI] has pointed to no statute, regulation or case that the Commerce Department has violated"); Def.-Int.'s PI Brief at 11; Def.-Int.'s Reply Brief at 5, 8, 10-11.

inadequacy for what is the normal jurisdictional scheme.'") (*quoting* Abitibi-Consol. Inc. v. United States, 30 CIT ____, ____, 437 F. Supp. 2d 1352, 1362 (2006); *citing* FTC v. Standard Oil Co., 449 U.S. 232, 244 (1980) ("we do not doubt that the burden of defending this proceeding will be substantial. But the expense and annoyance of litigation is part of the social burden of living under government") (internal quotation omitted)).[36]

In sum, as one leading case observes, "[g]iven the clear Congressional preference expressed in 28 U.S.C. § 1581(i) for review in accordance with 19 U.S.C. § 1516a, the court is reluctant to interfere in ongoing proceedings absent clear indication of the lack of adequacy of a § 1581(c) review." Hylsa, 21 CIT at 228, 960 F. Supp. at 325. The mere allegation of financial harm or the assertion that the Government has acted in contravention of the law does not suffice to render the remedy available under 28 U.S.C. § 1581(c) inadequate. *See* Int'l Customs Prods., Inc. v. United States, 467 F.3d 1324, 1327 (Fed. Cir. 2006) (citations omitted).

The administrative review at issue is ongoing and, at its conclusion, TMI will have the opportunity to challenge any aspect of the review – including Commerce's authority to initiate the review in the first instance. TMI has entirely failed to demonstrate that jurisdiction under 28 U.S.C. § 1581(c) will be unavailable here, or that any remedy in such an action would be "manifestly inadequate."

_____

[36]*See also*, *e.g.*, Int'l Custom Prods., Inc. v. United States, 467 F.3d 1324, 1327 (Fed. Cir. 2006) (holding that jurisdiction under § 1581(i) did not lie, notwithstanding claim that "many forms of financial hardship . . . including an imminent threat of bankruptcy" rendered "manifestly inadequate" plaintiff's remedy in any future action brought under § 1581(c)); Miller & Co., 824 F.2d at 964 (holding that jurisdiction under § 1581(i) did not lie, reasoning that "mere allegations of financial harm . . . do not make the remedy established by Congress manifestly inadequate") (citation omitted).

Under the circumstances, as the Court of Appeals emphasized in Nippon, "[i]t would be most inappropriate for a court to interfere with the ongoing administrative proceedings until Commerce has completed its action, at which time any decision by Commerce adverse to [plaintiff] may be judicially challenged in the usual manner." Nippon, 219 F.3d at 1355 (quotations omitted). Jurisdiction under § 1581(i) therefore cannot lie.

B. Ripeness

As explained in section III.A above, TMI cannot invoke jurisdiction pursuant to 28 U.S.C. § 1581(i) under the circumstances presented here, because its remedy in a challenge to the final results of the administrative review under § 1581(c) would not be "manifestly inadequate." But TMI's case suffers from another defect as well.

"The injunctive . . . remedies are discretionary, and courts traditionally have been reluctant to apply them to administrative determinations unless the[y] arise in the context of a controversy 'ripe' for judicial resolution." Abbott Laboratories v. Gardner, 387 U.S. 136, 148 (1967). Contrary to TMI's assertions, Commerce's rescission of the deferral of TMI's administrative review is not "final agency action" ripe for judicial review. See Pl.'s Response Brief at 6-7; Pl.'s PI Brief at 8.[37]

---

[37]Relying on Techsnabexport, TMI asserts that this matter is ripe for review, because "[w]here Commerce has decided an issue [to rescind the deferral of TMI's review] with finality and is continuing to do the very thing which causes the irreparable injury, jurisdiction is appropriate." See Pl.'s Response Brief at 6-7 (quoting Techsnabexport, Ltd. v. United States, 16 CIT 420, 795 F. Supp. 428 (1992)). But the relevance and precedential value of that decision are limited at best.

As a threshold matter, contrary to TMI's implication, the issue of ripeness was not considered in Techsnabexport. The case considered only whether the plaintiffs' remedy in an action under § 1581(c) would be "manifestly inadequate," and whether the action there was barred by the doctrine of exhaustion of administrative remedies. See generally Techsnabexport, 16 CIT 420, 795 F. Supp. 428.

The purpose of the doctrine of ripeness is "to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements over administrative policies, and also to protect the agencies from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties." Abbott Laboratories, 387 U.S. at 148-49. The doctrine "is drawn both from Article III limitations on judicial power and from prudential reasons for refusing to exercise jurisdiction." Reno v. Catholic Soc. Servs., Inc., 509 U.S. 43, 57 n.18 (1993) (citations omitted).

As the Court of Appeals noted in US-AITA, there are two leading Supreme Court cases on ripeness, Abbott Laboratories and Standard Oil. *See* U.S. Association of Importers of Textiles and Apparel v. U.S. Dep't of Commerce, 413 F.3d 1344, 1348 (Fed. Cir. 2005) ("US-AITA") (*citing* Abbott Laboratories, 387 U.S. at 138-39; Federal Trade Comm'n v. Standard Oil Co., 449 U.S. 232 (1980) ("Standard Oil")). As the Court of Appeals further noted, Abbott Laboratories identifies two factors to be weighed in determining whether an administrative determination is ripe for review – (1) "the fitness of the issues for judicial decision," and (2) "the hardship to the parties of withholding court consideration." *See* US-AITA, 413 F.3d at 1348 (*quoting* Abbott Laboratories, 387 U.S. at

Further, Techsnabexport was rendered more than 15 years ago, and has been explained and distinguished in more recent decisions, which have consistently held that the court lacks jurisdiction to entertain an action such as the case at bar. As one case put it, in Techsnabexport "[t]he factors in favor of jurisdiction were a final agency decision on the legal issue at hand, an extremely unique factual situation, widespread international impact, the asserted right of nations to be completely free of the administrative proceedings, and allegations of patently *ultra vires* governmental action, as well as irreparable harm." Hylsa, 21 CIT at 228, 960 F. Supp. at 325. *See also* Def.-Int.'s Reply Brief at 8-9 (emphasizing that – while Techsnabexport plaintiffs were contesting legality of proceeding as a whole – TMI is challenging only a particular interim determination (the decision to grant an extension of time, and the resulting rescission of the deferral) within a proceeding; TMI is not contesting the fact that it is subject to review, but is instead disputing only the timing of that review).

138-39).  Consideration of those two factors, together with other principles drawn from Standard Oil, Abbott Laboratories, and US-AITA, compels the conclusion that this case is not ripe for review.

As to the first factor of the ripeness analysis (the fitness of the issues for judicial review), Commerce's decision to grant an extension of time for the filing of USM's objection to TMI's request for deferral, and the resulting rescission of the deferral of TMI's review, are more analogous to the "threshold determination" in Standard Oil (where the claims at issue were found not ripe for review), than they are to the issuance of a formal regulation in Abbott Laboratories (where the claims were held to be ripe).  To be sure, much like the determination at issue in Standard Oil, Commerce's decisions here are "a prerequisite to a definitive agency position" on the extent of dumping (if any) by TMI during the period of review.  But they are themselves – at most – "determination[s] only that adjudicatory proceedings will commence."  *See* Standard Oil, 449 U.S. at 241-42.

The second factor of the ripeness analysis addresses the potential for hardship to the parties absent immediate judicial review.  Commerce's decisions here – like the determination at issue in Standard Oil – have "no legal force comparable to that of the regulation at issue in Abbott Laboratories, nor any comparable effect upon [TMI's] daily business."  *See* Standard Oil, 449 U.S. at 242.  Like the plaintiff in Standard Oil, TMI cites as its injury "the burden of responding" and participating in the agency's proceedings.  *Id.*  As the Supreme Court emphasized in Standard Oil, however, "[a]lthough this burden certainly is substantial, it is different in kind and legal effect from the burdens attending what heretofore has been considered to be final agency action."  *Id.*[38]

---

[38]The plaintiff in Standard Oil argued that "the expense and disruption of defending itself in protracted adjudicatory proceedings constitutes irreparable harm."  Standard Oil, 449 U.S. at 243-44.

Standard Oil contrasted the "lack of legal or practical effect" of the agency's action on the plaintiff in that case with "the effect of the judicial review sought by [the plaintiff]." *See* Standard Oil, 449 U.S. at 242. As the Supreme Court there noted, "the effect of the judicial review sought . . . is likely to be interference with the proper functioning of the agency and a burden for the courts." *Id*. "Judicial intervention into the agency process . . . also leads to piecemeal review which at the least is inefficient and *upon completion of the agency process might prove to have been*

---

But the Supreme Court made short work of those concerns:

> [W]e do not doubt that the burden of defending this proceeding will be substantial. But "the expense and annoyance of litigation is 'part of the social burden of living under government.'" Petroleum Exploration, Inc. v. Public Service Comm'n, 304 U.S. 209, 222 (1938). As we recently reiterated: "Mere litigation expense, even substantial and unrecoupable cost, does not constitute irreparable injury." Renegotiation Board v. Bannercraft Clothing Co., 415 U.S. 1, 24 (1974).

Standard Oil, 449 U.S. at 244. *See also* n.36 (and accompanying text), *supra*.

TMI claims that, because it relied on Commerce's initial deferral of its administrative review and did not prepare for the review, the ongoing proceeding is diverting personnel and funding from its routine business activities, and is thus disruptive of its "business planning and allocation of resources." *See* Pl.'s PI Brief at 26. Without regard to whether TMI's reliance on the deferral was reasonable (*see*, *e.g.*, Tr. at 87 (arguing that TMI could not reasonably rely on the deferral in light of the pendency of USM's objection), it is enough to note that TMI's burden here is not beyond the "disruption" generally associated with "protracted adjudicatory proceedings" that is contemplated by Standard Oil. *Cf*. Hyundai, 10 CIT at 698-99, 650 F. Supp. at 176-77 (denying preliminary injunction enjoining initiation of administrative review, where alleged immediate and irreparable harm was burden of responding to Commerce questionnaires; rejecting plaintiffs' attempts to distinguish their situation from precedent that holds that such litigation-related expenses do not constitute irreparable injury; "According to plaintiffs, their costs in completing the questionnaires constitute business expenses resulting from the diversion of management and sales personnel from their normal income producing activities. . . . But increased business expenses alone also do not justify the injunction sought. . . . In any event, . . . the costs borne by the companies in utilizing their own employees is linked directly to the agency action in issuing the questionnaire and consequently is a normal litigation expense.") (citations omitted).

*unnecessary*." *Id.* (emphasis added) (citations omitted).[39] "Furthermore, unlike the review in Abbott

Laboratories, judicial review [in the instant case] . . . would delay resolution of the ultimate

_____

[39]The plaintiff in Standard Oil argued that its challenge to the agency's determination initiating a proceeding might evade judicial review entirely unless it was reviewed before the agency's adjudication concluded. But the Supreme Court rejected concerns that the plaintiff's objection could be mooted if the plaintiff prevailed in the adjudication before the agency:

> These concerns do not support a conclusion that the issuance of a complaint . . . [by the agency] is "final agency action." To the contrary, one of the principal reasons to await the termination of agency proceedings is "to obviate all occasion for judicial review." . . . Thus, the possibility that [the plaintiff's] challenge may be mooted in adjudication warrants the requirement that [the plaintiff] pursue [agency] adjudication, not shortcut it.

Standard Oil, 449 U.S. at 244 n.11 (citations omitted); *see generally id.* at 244-25.

So too here the possibility that TMI ultimately may be satisfied with the final results of the administrative review and have no cause to pursue litigation against Commerce counsels in favor of requiring TMI to proceed with the administrative review before the agency, "not shortcut it." *Accord* Matsushita Elec. Indus. Co. v. United States, 861 F.2d 257, 260 (Fed. Cir. 1988) (affirming trial court's decision dismissing as unripe an action concerning methodology to be used by Commerce in administrative reviews of antidumping duty order covering TVs from Japan; "We agree with the Court of International Trade that any issue with respect to the methodology Commerce will use in conducting the reviews is not ripe for adjudication. . . . [*I*]*t is possible that Commerce may finally revoke the dumping order under whatever methodology it employs. If that happens, Matsushita would not be injured by any change in methodology*, *and there would be no reason for it to seek judicial review or for us to decide the issue*.") (emphasis added) (*citing* Standard Oil, 449 U.S. at 244); Special Commodity Group v. Baldridge, 6 CIT 264, 269, 575 F. Supp. 1288, 1293 (1983) (noting that "[w]here administrative proceedings are in process, and the agency has not adopted a final decision, the matter is generally not ripe for judicial review. . . . Commerce has not completed the administrative review . . . and the possibility exists that the final agency determination may indicate that there were no subsidies, in which event the plaintiff would presumably find no reason to complain. In the interest of efficient agency action, interlocutory determinations should not be considered when final agency decisions are judicially reviewable.") (citations omitted); PPG, 2 CIT at 112, 525 F. Supp. at 885 (dismissing for lack of jurisdiction action brought under § 1581(i) seeking to compel Commerce to convene disclosure conference in administrative review of antidumping duty order; observing that "[i]t may well be that plaintiff will find the [final] determinations of [Commerce] with respect to the annual review satisfactory for the protection of its interests. In that event, Commerce's refusal to grant a disclosure conference would be, at most, error without injury.").

question." *Id*. The Supreme Court's observations apply with equal force here.[40]

Like the determination at issue in <u>Standard Oil</u>, the decisions by Commerce that TMI seeks to challenge in this action are "a step forward, and will merge in, the [agency's] decisions on the merits." *See* <u>Standard Oil</u>, 449 U.S. at 246. Thus, like the determination at issue in <u>Standard Oil</u>, Commerce's decisions in this case are not "final agency action" and are not ripe for judicial review before administrative adjudication has concluded. *Id*. *See also*, *e.g.*, <u>US-AITA</u>, 413 F.3d 1344, 1348-50 (holding that, in action brought under § 1581(i), inter-agency governmental body's decisions to accept allegedly defective petitions requesting consultations with China concerning importation of textiles were not ripe for judicial review); <u>Matsushita Elec. Indus. Co. v. United States</u>, 861 F.2d 257, 260 (Fed. Cir. 1988) (affirming trial court's decision dismissing as unripe action brought under § 1581(i) concerning methodology to be used by Commerce in ongoing administrative reviews of antidumping duty order covering TVs from Japan); <u>PRC</u>, 31 CIT at ____ n.14, 483 F. Supp. 2d at 1283 n.14 (dismissing for lack of jurisdiction under § 1581(i) action challenging Commerce's initiation of countervailing duty investigation, reasoning that remedy in action under § 1581(c) would not be inadequate; but noting that action likely also could be dismissed as unripe); <u>Abitibi</u>, 30 CIT at ____, 437 F. Supp. 2d at 1357-62 (dismissing as unripe action brought under § 1581(i) involving ongoing administrative review, where plaintiffs sought either mandamus directing Commerce to accept plaintiffs as voluntary respondents or preliminary injunction

_____

[40]As the Government has pointed out, "[i]f the Court grants TMI's request for injunctive relief, Commerce would have to suspend its administrative proceeding pending the resolution of this action. The ultimate resolution of this litigation, even on an expedited briefing schedule, would likely stretch well into 2008 and possibly through June 2008." *See* Def.'s PI Brief at 14. Any appeals would further protract the schedule for final resolution of this matter.

prohibiting continuation of administrative review pending selection of statistically valid sample);

TKS I, 29 CIT at ____, 403 F. Supp. 2d at 1293-98 (dismissing as unripe action brought under §

1581(i) seeking to enjoin Commerce's conduct of changed circumstances review).

In sum, the decisions of Commerce that TMI here seeks to challenge in connection with the

ongoing administrative review of its entries do not constitute final agency action. Moreover,

dismissal of this action will work no real legally cognizable hardship on TMI. Thus, even if TMI's

remedy in an action under 28 U.S.C. § 1581(c) challenging the final results of the administrative

review were not adequate (which it is), this matter would nevertheless be subject to dismissal on

grounds of ripeness. TMI's claims are premature.

## IV. **Conclusion**

For all the reasons set forth above, the Motions to Dismiss filed by Defendant and

Defendant-Intervenor must be granted.

Judgment will enter accordingly.

_____
/s/ Delissa A. Ridgway
Delissa A. Ridgway
Judge

Decided: January 8, 2008
      New York, New York