Slip Op. 25-108

## UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| **J.D. IRVING, LIMITED,** | |
| Plaintiff, | |
| v. | **Before: Timothy M. Reif, Judge** |
| **UNITED STATES AND U.S. DEPARTMENT OF COMMERCE,** | **Court No. 22-00256** |
| Defendants. | |

## OPINION

[Granting defendants' motion to dismiss.]

Dated: August 21, 2025

Jay C. Campbell, Alison J.G. Kepkay and Walter J. Spak, White & Case, LLP, of Washington, D.C., for plaintiff J.D. Irving, Limited.

Eric E. Laufgraben, Senior Trial Counsel, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, of Washington, D.C., for defendants United States and U.S. Department of Commerce. With him on the briefs were Yaakov M. Roth, Acting Assistant Attorney General, Patricia M. McCarthy, Director and Claudia Burke, Deputy Director. Of counsel was Benjamin Juvelier, Office of the Chief Counsel for Trade Enforcement and Compliance, U.S. Department of Commerce, of Washington, D.C.

\*　　\*　　\*

Reif, Judge: J.D. Irving, Limited ("plaintiff" or "J.D. Irving") brings the instant action to "contest[] the antidumping ("AD") duty cash deposit instructions issued by the U.S. Department of Commerce ("Commerce") to U.S. Customs and Border Protection [("Customs")] following publication of the final results of the 2020 administrative review [("AR")] of the AD duty order on certain softwood lumber products from Canada." Am. Compl. ¶ 1, ECF No. 14; id., attach. 1; see Cash Deposit Instructions for Certain

Softwood Lumber from Canada ("AR 3 Cash Deposit Instructions"), Message No. 2228402 (A-122-857) (Aug. 16, 2022); *Certain Softwood Lumber Products from Canada: Antidumping Duty Order and Partial Amended Final Determination* ("*Softwood Lumber Order*"), 83 Fed. Reg. 350 (Dep't of Commerce Jan. 3, 2018).

The United States and Commerce (collectively, "defendants") move to dismiss the instant action pursuant to Rule 12(b)(1) of the U.S. Court of International Trade. *See* Defs.' Mot. to Dismiss for Lack of Subject-Matter Jurisdiction ("Defs. Br."), ECF No. 17; *see also* Defs.' Reply in Supp. of Mot. to Dismiss for Lack of Subject-Matter Jurisdiction ("Defs. Reply Br."), ECF No. 19. For the reasons discussed below, the court grants defendants' motion to dismiss.

## BACKGROUND

### I.     The administrative proceedings

J.D. Irving is a Canadian producer and exporter of merchandise subject to the *Softwood Lumber Order*, as well as the importer of record of that merchandise. Am. Compl. ¶ 9.

Commerce published the *Softwood Lumber Order* on January 3, 2018. *See Softwood Lumber Order*, 83 Fed. Reg. 350.

On April 1, 2019, Commerce initiated its first administrative review ("AR 1") of the *Softwood Lumber Order*. *Certain Softwood Lumber Products from Canada: Initiation of Antidumping and Countervailing Duty Administrative Reviews*, 84 Fed. Reg. 12,209, 12,209-10 (Dep't of Commerce Apr. 1, 2019). AR 1 covered entries made between June 30, 2017, and December 31, 2018. *Id.* at 12,210.

Commerce did not select J.D. Irving as a mandatory respondent in AR 1.  *See Certain Softwood Lumber Products from Canada: Preliminary Results of Antidumping Duty Administrative Review and Rescission of Review, in Part; 2017-2018*, 85 Fed. Reg. 7,282, 7,282-83 (Dep't of Commerce Feb. 7, 2020).  Accordingly, upon the publication of the AR 1 final results on November 30, 2020, Commerce assigned to J.D. Irving the non-selected companies' assessment rate of 1.57%.  *Certain Softwood Lumber Products from Canada: Final Results of Antidumping Duty Administrative Review; 2017-2018* ("*AR 1 Final Results*"), 85 Fed. Reg. 76,519, 76,520-21 (Dep't of Commerce Nov. 30, 2020).  Pursuant to section 751(a)(2)(C) of the Tariff Act of 1930, as amended, 19 U.S.C. § 1675(a)(2)(C),[1] Commerce instructed Customs to collect at this 1.57% rate cash deposits on J.D. Irving's entries made on or after the publication date of the *AR 1 Final Results*.  See *AR 1 Final Results* at 76,520.

On March 10, 2020, Commerce initiated its second administrative review ("AR 2"), which covered entries made between January 1, 2019, and December 31, 2019. *Initiation of Antidumping and Countervailing Duty Administrative Reviews*, 85 Fed. Reg. 13,860, 13,862 (Dep't of Commerce Mar. 10, 2020) (initiation notice); *Certain Softwood Lumber Products from Canada: Final Results of Antidumping Duty Administrative Review; 2019* ("*AR 2 Final Results*"), 86 Fed. Reg. 68,471, 68,471-72 (Dep't of Commerce Dec. 2, 2021) and accompanying Issues and Decision Memorandum ("IDM") (Dep't of Commerce Nov. 23, 2021).  Commerce did not select J.D. Irving as a mandatory respondent in AR 2.  *See AR 2 Final Results*, 86 Fed. Reg. at 68,472.

---

[1] References to the U.S. Code are to the 2018 edition.  Further citations to the Tariff Act of 1930, as amended, are to the relevant portions of Title 19 of the U.S. Code.

Upon the publication of the *AR 2 Final Results* on December 2, 2021, Commerce assigned to J.D. Irving the non-selected companies' assessment rate of 11.59%. *See id.* at 68,472-74. Commerce instructed Customs to collect at this 11.59% rate cash deposits on J.D. Irving's entries made on or after December 2, 2021, the publication date of the *AR 2 Final Results*. *See id.* at 68,473; Am. Compl., attach. 11; Cash Deposit Instructions for Certain Softwood Lumber from Canada ("AR 2 Cash Deposit Instructions"), Message No. 1343410 (A-122-857) (Dec. 9, 2021).

On March 4, 2021, following Commerce's initiation of AR 2 but prior to the publication of the *AR 2 Final Results*, Commerce initiated its third administrative review ("AR 3") of the *Softwood Lumber Order*. *Initiation of Antidumping and Countervailing Duty Administrative Reviews*, 86 Fed. Reg. 12,599, 12,599-601 (Dep't of Commerce Mar. 4, 2021) (initiation notice). AR 3 covered entries made between January 1, 2020, and December 31, 2020. *Id.* at 12,601.

On August 3, 2022, Commerce issued the AR 3 final results. *Certain Softwood Lumber Products from Canada: Final Results of Antidumping Duty Administrative Review and Final Determination of No Shipments; 2020* ("*AR 3 Final Results*"), 87 Fed. Reg. 48,465 (Dep't of Commerce Aug. 9, 2022) and accompanying IDM (Dep't of Commerce Aug. 3, 2022); Am. Compl., attach. 13. Commerce did not select J.D. Irving as a mandatory respondent in AR 3, and no review was requested of J.D. Irving's entries. *See AR 3 Final Results*, 87 Fed. Reg. 48,465.

Upon publication of the *AR 3 Final Results*, Commerce instructed Customs to continue to collect at the 11.59% rate cash deposits on J.D. Irving's entries made on or

after the publication date. *See AR 3 Final Results* IDM at cmt. 9; AR 3 Cash Deposit Instructions.

## II. Binational panel review under the United States-Mexico-Canada Agreement

Article 10.12 of the United States-Mexico-Canada Agreement ("USMCA"), "like NAFTA Article 1904, provides a dispute settlement mechanism for purposes of reviewing antidumping and countervailing duty determinations issued by the United States, Canada, and Mexico." *Procedures and Rules for Article 10.12 of the United States-Mexico-Canada Agreement*, 86 Fed. Reg. 70,045 (Dep't of Commerce Dec. 9, 2021). The procedures and rules set forth in Article 10.12 of the USMCA are "virtually unchanged" from those in Article 1904 of the North American Free Trade Agreement ("NAFTA"). *Id.* Article 10.12 provides that a binational panel "may uphold a final determination [by Commerce], or remand [the determination] for action not inconsistent with the panel's decision." USMCA art. 10.12, ¶ 8. In addition, "[t]he decision of a panel . . . shall be binding on the involved Parties with respect to the particular matter . . . that is before the panel." *Id.* ¶ 9.

19 U.S.C. § 1516a(g) codifies into U.S. law the binational panel review process set forth in Article 10.12 of the USMCA. Section 1516a(g)(2) provides that:

> If binational panel review of a determination is requested pursuant to . . . article 10.12 of the USMCA, then . . . —
>
> > (A) the determination is not reviewable under [19 U.S.C. § 1516a(a)], and
> >
> > (B) no court of the United States has power or jurisdiction to review the determination on any question of law or fact by an action in the nature of mandamus or otherwise.

19 U.S.C. § 1516a(g)(2)(A)-(B).

In essence, "the binational panel process replaces the forum—not the remedies—available to the parties." *Bldg. Sys. de Mex., S.A. de C.V. v. United States*, 44 CIT __, __, 476 F. Supp. 3d 1401, 1410 (2020); *see* S. Rep. No. 100-509, at 31 (1988), *as reprinted in* 1988 U.S.C.C.A.N. 2395, 2426 ("Because binational panels act as a substitute for U.S. courts in deciding whether a determination is consistent with U.S. law, the Committee intends binational panel decisions to be implemented in the same manner that court decisions are implemented under current law.").

The U.S. Court of Appeals for the Federal Circuit (the "Federal Circuit") has clarified that "when an antidumping duty determination is reviewable by a binational panel, judicial review by the CIT is unavailable unless and until the time for requesting a panel has expired or the panel has dismissed its review for lack of jurisdiction (or, the operation of USMCA Article 10.12 has been suspended)." *See J.D. Irving, Ltd. v. United States* ("*J.D. Irving I*"), 119 F.4th 48, 56 (Fed. Cir. 2024). Several exceptions to the exclusive review of a determination by a binational panel are set forth in 19 U.S.C. §

1516a(g)(3) and (4).[2]  There is no indication — nor do the parties assert — that any of the statutory exceptions applies to the instant action.

The statute defines "determination" with reference to the "[r]eviewable determinations" enumerated in 19 U.S.C. § 1516a(a)(2)(B), as including "a final determination . . . by [Commerce] . . . under section 1675" of Title 19 of the U.S. Code — i.e., Commerce's final results with respect to the administrative review of an AD or

---

[2] 19 U.S.C. § 1516a(g)(3) provides the following exceptions to exclusive binational panel review:

> (A) In general.  A determination is reviewable under [19 U.S.C. § 1516a(a)] if the determination sought to be reviewed is —
>
>> (i) a determination as to which neither the United States nor the relevant FTA country requested review by a binational panel pursuant to . . . article 10.12 of the USMCA;
>>
>> (ii) a revised determination issued as a direct result of judicial review, commenced pursuant to [19 U.S.C. § 1516a(a)], if neither the United States nor the relevant FTA country requested review of the original determination,
>>
>> (iii) a determination issued as a direct result of judicial review that was commenced pursuant to [19 U.S.C. § 1516a(a)] prior to the entry into force of the . . . USMCA,
>>
>> (iv) a determination which a binational panel has determined is not reviewable by the binational panel,
>>
>> (v) a determination as to which binational panel review has terminated pursuant to article 10.13 of the USMCA, or
>>
>> (vi) a determination as to which extraordinary challenge committee review has terminated pursuant to article 10.13 of the USMCA.

19 U.S.C. § 1516a(g)(3)(A).  And § 1516a(g)(4) provides for certain exceptions with respect to actions that raise constitutional issues.  *See Mitsubishi Elecs. Indus. Can., Inc. v. Brown*, 20 CIT 313, 316, 917 F. Supp. 836, 838 (1996); *J.D. Irving, Ltd. v. United States*, 47 CIT __, __ n.3, 615 F. Supp. 3d 1323, 1328 n.3 (2023).

countervailing duty ("CVD") order.  19 U.S.C. § 1516a(a)(2)(B)(iii); 19 U.S.C. § 1675; *see also Shinyei Corp. of Am. v. United States*, 355 F.3d 1297, 1304, 1309-10 (Fed. Cir. 2004) (stating that reviewable determinations under 19 U.S.C. § 1516a(a)(2)(B) include the final results of Commerce in an administrative review).

### III.   *J.D. Irving I*

On December 28, 2021, certain interested parties to the AR 2 proceeding — apart from J.D. Irving — requested binational panel review of the *AR 2 Final Results* pursuant to Article 10.12 of the USMCA.  *See J.D. Irving, Ltd. v. United States*, 47 CIT __, __, 615 F. Supp. 3d 1323, 1327 (2023).

On December 30, 2021, J.D. Irving filed a complaint and commenced an appeal before this Court of the AR 2 Cash Deposit Instructions.  *See id.*  On January 25, 2023, the Court concluded that it lacked subject matter jurisdiction under § 1581(i) to hear the action and granted the government's motion to dismiss.  *Id.* at __, 615 F. Supp. 3d at 1325.  On October 10, 2024, the Federal Circuit affirmed this Court's decision.  *J.D. Irving I*, 119 F.4th at 49-50.

### IV.   **Procedural history of the instant action**

On September 8, 2022, certain interested parties to the AR 3 proceeding — apart from J.D. Irving — requested binational panel review of the *AR 3 Final Results* pursuant to Article 10.12 of the USMCA.  *See* Am. Compl., attach. 5.  On September 9, 2022, J.D. Irving filed a complaint and commenced an appeal before this Court of the AR 3 Cash Deposit Instructions.  Compl., ECF No. 2.

On October 10, 2022, J.D. Irving moved to consolidate the instant action with its appeal of the AR 2 Cash Deposit Instructions.  Mot. to Consolidate Cases, ECF No. 9.

On October 31, 2022, the Court stayed the instant action pending a final and conclusive resolution of the jurisdictional issue raised in J.D. Irving's appeal of the AR 2 Cash Deposit Instructions.  Order, ECF No. 11.

On February 6, 2025, following the Federal Circuit's ruling in *J.D. Irving I*, plaintiff filed an amended complaint.  Am. Compl.  On March 14, 2025, defendants moved to dismiss the amended complaint.  Defs. Br.

## LEGAL FRAMEWORK

Subject matter jurisdiction is a threshold matter that "cannot be forfeited or waived and should be considered when fairly in doubt."  *Ashcroft v. Iqbal*, 556 U.S. 662, 671 (2009).  It is the plaintiff's burden to demonstrate that subject matter jurisdiction exists. *See Techsnabexport, Ltd. v. United States*, 16 CIT 420, 422, 795 F. Supp. 428, 432 (1992); *Design Int'l Grp., Inc. v. United States*, 39 CIT __, __, 113 F. Supp. 3d 1342, 1344 (2015).

28 U.S.C. § 1581(c) provides this Court with "exclusive jurisdiction [over] any civil actions commenced under [19 U.S.C. § 1516a]."  Section 1516a governs judicial review of determinations of Commerce in AD and CVD proceedings.  *See* 19 U.S.C. § 1516a.

28 U.S.C. § 1581(i) is the Court's "residual" jurisdictional provision, *Fujitsu Gen. Am., Inc. v. United States*, 283 F.3d 1364, 1371 (Fed. Cir. 2002) (citation omitted), which allows the Court to "take jurisdiction over designated causes of action founded on other provisions of law."  *Norcal/Crosetti Foods, Inc. v. United States*, 963 F.2d 356, 359 (Fed. Cir. 1992).  This Court has stated that § 1581(i) constitutes "a Congressional fail-safe device" and that "[i]f the circumstances of a case are sufficiently unusual so that one may presume that Congress could not have provided for such a case under the general

language of 19 U.S.C. § 1516a, . . . 28 U.S.C. § 1581(i) is available to afford a means of vindication of statutory rights." *Hylsa, S.A. de C.V. v. United States*, 21 CIT 222, 227-28, 960 F. Supp. 320, 324 (1997), *aff'd sub nom., Hylsa, S.A. v. Tuberia Nat'l, S.A.*, 135 F.3d 778 (Fed. Cir. 1998).

To determine whether parties may invoke § 1581(i), the Federal Circuit has set forth a "two-step inquiry":  (1) "[W]e determine whether jurisdiction under a different subsection of § 1581 could have been available"; and (2) if such jurisdiction was available, "we ask whether the provided remedy would have been manifestly inadequate." *J.D. Irving I*, 119 F.4th at 53-54 (quoting *Rimco Inc. v. United States*, 98 F.4th 1046, 1053 (Fed. Cir. 2024)).  At the first step, the Federal Circuit has explained that "[b]ecause the availability of jurisdiction under other subsections of § 1581 depends on the particular type of agency action challenged, we must first determine the true nature of an action." *Rimco*, 98 F.4th at 1053 (citation omitted).  The "true nature" inquiry requires that the court engage with the "totality" of the allegations of the party invoking jurisdiction under § 1581 and "identify the particular agency action underlying the claimed harm." *J.D. Irving I*, 119 F.4th at 54. (citing *Rimco*, 98 F.4th at 1053)

## DISCUSSION

The court concludes that "jurisdiction under a different subsection of § 1581," namely § 1581(c), "could have been available" in the instant case absent binational panel review of the *AR 3 Final Results*.[3]  *See Rimco*, 98 F.4th at 1053.

---

[3] Because the amended complaint does not allege that binational panel remedies would be "manifestly inadequate," *Rimco Inc. v. United States*, 98 F.4th 1046, 1053 (Fed. Cir. 2024), the court declines to address the second step of the *Rimco* inquiry.  *Compare* Compl. ¶ 7 *with* Am. Compl. ¶ 7.

Plaintiff argues that the "true nature" of its action is a challenge to Commerce's AR 3 Cash Deposit Instructions, not to the *AR 3 Final Results* themselves. Am. Compl. ¶ 7. Plaintiff insists that "[b]ecause Commerce's cash deposit instructions are not a reviewable determination under 19 U.S.C. § 1516a(a)(2)(B), jurisdiction under [§ 1581(c)] is unavailable." *Id.*

In *J.D. Irving I*, the Federal Circuit rejected J.D. Irving's identical argument that the "true nature" of that action was "a challenge to Commerce's 'administration and enforcement' of the AR 2 Final Results" in the AR 2 Cash Deposit Instructions "as opposed to a challenge to the Final Results themselves." *J.D. Irving I*, 119 F.4th at 55. The Federal Circuit offered three core reasons for its conclusion.

First, the *J.D. Irving I* court determined that the particular agency action underlying the alleged harm to J.D. Irving was "Commerce's assignment of a cash deposit rate higher than 1.57% in the AR 2 preliminary results and Final Results." *Id.*

Second, the court noted that in the *AR 2 Final Results* IDM Commerce explained that it would "assign [J.D. Irving] a cash deposit rate based on the final results of this administrative review [i.e., AR 2].'" *Id.* (second alteration in original) (quoting *AR 2 Final Results* IDM). Commerce's explanation addressed objections to the cash deposit rate that J.D. Irving raised in a case brief submitted in response to the AR 2 preliminary results. *Id.* at 52. Commerce in an IDM responds only to objections to the preliminary results, which suggested that the "true nature" of J.D. Irving's challenge was a challenge to the final results.

Third, J.D. Irving confirmed that it sought review specifically of the *AR 2 Final Results* in its notice of intent to seek judicial review to the USMCA binational panel. *See*

*id.* at 55.  Such a review is expressly provided for under § 1581(c).  In light of the foregoing points, the Federal Circuit concluded that "the proper source of the CIT's jurisdiction over JDI's action would have been § 1581(c)."  *Id.*

The instant case is identical on all three points.  First, the particular agency action underlying plaintiff's alleged harm is Commerce's failure to "update J.D. Irving's AD cash deposit rate from the dumping margin determined for 2019 (11.59%) to the most recent dumping margin established for 2020 (1.57%)."  Am. Compl. ¶ 26.  Commerce declined plaintiff's request to update the cash deposit rate in the *AR 3 Final Results*.  *Id.*, attach. 13 at 43-44.  Commerce's decision to maintain the AR 2 cash deposit rate in AR 3 renders the "particular agency action[s]" in *J.D. Irving I* and the instant case functionally identical.  *See J.D. Irving I*, 119 F.4th at 55.  The operative action in both reviews was that Commerce assigned a cash deposit rate of 11.59% — in the case of AR 2 as a result of a requested review, in AR 3 because J.D. Irving was not under review.  Put differently, the two actions concern "Commerce's assignment of a cash deposit rate higher than 1.57%."  *Id.*

As in *J.D. Irving I*, plaintiff argues that "the Court has jurisdiction under § 1581(i)(1)(D) because [plaintiff] challenges Commerce's 'administration and enforcement' of 'tariffs, duties, fees, or other taxes on the importation of merchandise for reasons other than the raising of revenue' through Commerce's issuance of the unlawful

[AR 3 Cash Deposit Instructions] to [Customs]."[4]  Pl.'s Resp. in Opp'n to Def.'s Mot. to Dismiss ("Pl. Br.") at 7, 9, ECF No. 18.  Plaintiff analogizes to *Consolidated Bearings* in which "the court concluded that jurisdiction under § 1581(i) was proper because it related to how Commerce incorrectly applied liquidation instructions from an antidumping administrative review."  *Id.* at 15 (citing *Consol. Bearings Co. v. United States*, 348 F.3d 997, 1002 (Fed. Cir. 2003)).  Plaintiff points specifically to the Federal Circuit's conclusion that "Consolidated does not object to the final results" but instead "seeks application of those final results to its entries."  *Consol. Bearings Co.*, 348 F.3d at 1002.

But in *J.D. Irving I*, the Federal Circuit distinguished J.D. Irving's challenge to the AR 2 Cash Deposit Instructions from the challenge to the instructions in *Consolidated Bearings*.  *See J.D. Irving I*, 119 F.4th at 54-55.  There, the court characterized J.D. Irving's action as a "challenge[] to the final results of an administrative review by a participant in that review" rather than a challenge to the "administration and enforcement" of the final results.  *Id.* (quoting *Consol. Bearings Co.*, 348 F.3d at 1002)).  Similarly, in this case, J.D. Irving is challenging the final results of AR 3, not the application of those results to its entries.  Accordingly, the instant case aligns with the Federal Circuit's first point in *J.D. Irving I*.

---

[4] Plaintiff does not address directly 28 U.S.C. § 1581(i)(2)(B), which removes jurisdiction from this Court "over an antidumping or countervailing duty determination which is reviewable by . . . a binational panel under [19 U.S.C. § 1516a(g)]."  *See* Pl. Br. However, plaintiff's arguments as to the "administration and enforcement" of the *AR 3 Final Results* indicate that plaintiff's position is that § 1581(i)(2)(B) is not applicable.  As discussed in this section, the court disagrees.

Also, as in *J.D. Irving I*, plaintiff submitted a case brief in AR 3 in which it argued that the cash deposit rate assigned to J.D. Irving must be updated to reflect the company's dumping margin for 2020. *See* Am. Compl., attach 3; *J.D. Irving I*, 119 F.4th at 52. And as in *J.D. Irving I*, Commerce in the *AR 3 Final Results* IDM addressed plaintiff's arguments and explained that the decision of Commerce comported with "long-established precedent for the treatment of companies, such as J.D. Irving, that are not under review." *AR 3 Final Results* IDM at 43; *see J.D. Irving I*, 119 F.4th at 55. The instant case aligns with *J.D. Irving I* on this second point as well.

On the Federal Circuit's third point, plaintiff here in its notice to the USMCA binational panel of plaintiff's intent to seek judicial review, stated expressly that plaintiff sought judicial review "to contest the *final determination* issued by the United States Department of Commerce" in AR 3. Am Compl., attach. 4 at 1 (emphasis supplied); *cf. J.D. Irving I*, 119 F.4th at 55. At no point did plaintiff state that it sought judicial review to contest only the accompanying cash deposit instructions. *See* Am. Compl., attach. 4. Accordingly, the instant case aligns with *J.D. Irving I* also on the third point. For these reasons, the court concludes that the "true nature" of plaintiff's action is a challenge to the *AR 3 Final Results*, specifically the portion that concerns the cash deposit rate assigned to plaintiff. *Rimco*, 98 F.4th at 1053.

But despite the substantial factual parallels between *J.D. Irving I* and the instant case, plaintiff argues that *J.D. Irving I* does not control due to what plaintiff describes as

"[a] material difference in key facts".[5]  Pl. Br. at 12.  Plaintiff asserts that in the instant case, "J.D Irving was not subject to an administrative review for the 2020 POR."  *Id.* And, according to plaintiff, "[b]ecause J.D. Irving was not subject to [AR 3], it is not subject to the dumping margins and cash deposit rates that are set in the [*AR 3*] *Final Results*."  *Id.* at 14.  Plaintiff's argument is unavailing.

19 U.S.C. § 1516a(a)(2)(A)(i)(I) provides for judicial review of AD administrative reviews under § 1675.  This Court has jurisdiction over such claims under 28 U.S.C. § 1581(c).  Section 1516a(a)(2)(A) requires that a party seeking judicial review of AD administrative reviews be "an interested party who is a party to the proceeding in connection with which the matter arises" before the party may "commence [the] action . . . contesting any factual findings or legal conclusions upon which the determination is based."  In parallel, 28 U.S.C. § 2631(c) states that "[a] civil action contesting a determination listed in [19 U.S.C. § 1516a] may be commenced in the Court of International Trade by any interested party who was a party to the proceeding in connection with which the matter arose."

The core question here is whether plaintiff is an "interested party who is a party to the proceeding in connection with which the matter arises," namely AR 3.  19 U.S.C. § 1516a(a)(2)(A)(i)(I); 28 U.S.C. § 2631(c).  The court concludes that plaintiff is such a party.

---

[5] Plaintiff raises two factual differences: "(1) that J.D. Irving was not subject to an administrative review for the 2020 POR, and (2) that J.D. Irving has challenged Commerce's [AR 3 Cash Deposit Instructions] – *and is not challenging Commerce's final results*."  Pl. Br. at 12.  Because the court has already addressed the second purported difference above, the following analysis will address only the first purported difference.

To start, plaintiff concedes that it is an "interested party." Am. Compl. ¶ 5 (acknowledging that J.D. Irving "participated in [AR 3] as an interested party"); *see also* Pl. Br. at 8 ("Although J.D. Irving participated in [AR 3] as an interested party by submitting a case brief to Commerce, this does not change the 'true nature of the action,' which is Commerce's failure to update the [AR 3 Cash Deposit Instructions] to reflect the correct cash deposit rate for J.D. Irving."). However, plaintiff denies in effect that it is a "party to the proceeding" when it avers that it "does not contest the [*AR 3 Final Results*] because it was not subject to those results." Pl. Br. at 8, 12, 14-15; *see also* Am. Compl. ¶ 4 ("Whereas J.D. Irving was subject to [AR 2], it was not subject to [AR 3]. Consequently, unlike the [*AR 2 Final Results*], the [*AR 3 Final Results*] did not apply to J.D. Irving at all."). Plaintiff's denial implies that judicial review pursuant to § 1581(c) "could have been available" only if plaintiff was "subject" to the *AR 3 Final Results*. *See Rimco*, 98 F.4th at 1053.

This Court and the Federal Circuit have stated that to satisfy the "party to the proceeding" requirement, a party's participation in the relevant administrative proceeding "must reasonably convey the separate status of a party" and be "meaningful enough 'to put Commerce on notice of a party's concerns.'" *Laclede Steel Co. v. United States*, No. 96-1029, 1996 WL 384010, at *2 (Fed. Cir. July 8, 1996) (citations omitted); *Gov't of Can. v. United States*, 48 CIT __, __, 686 F. Supp. 3d 1320, 1327 (2024); *Pay Less Here, LLC v. U.S. Int'l Trade Comm'n*, 49 CIT __, __, 778 F. Supp. 3d 1360, 1364 (2025). At bottom, the "statutory standing requirement that a party first be a 'party to the proceeding' before the agency is a 'low bar.'" *Pay Less Here*, 49 CIT at __, 778 F. Supp. 3d at 1365 (quoting *Gov't of Can.*, 48 CIT at __, 686 F. Supp. 3d at 1335).

The court concludes for two reasons that plaintiff was "a party to the proceeding" in AR 3.  First, plaintiff's entry of appearance and submission of a case brief in AR 3 "reasonably convey . . . separate status."  *See* Entry of Appearance, Softwood Lumber from Canada (A-122-857) (Aug. 23, 2021); Am. Compl., attach. 3; *Specialty Merch. Corp. v. United States*, 31 CIT 364, 365, 477 F. Supp. 2d 1359,1361 (2007); *cf. Pay Less Here*, 49 CIT at __, 778 F. Supp. 3d at1364-66 (concluding that plaintiff was not "a party to the proceeding" because plaintiff "failed . . . to clear the unquestionably low bar of filing an entry of appearance in proceedings before" the agency).

Second, plaintiff's case brief "'put Commerce on notice of [plaintiff's] concerns'" because Commerce responded to plaintiff's arguments in the *AR 3 Final Results* IDM. *Laclede Steel*, 1996 WL 384010, at *2; *see* Am. Compl., attach. 13 at 40-46 ("Comment 9: Whether to Update J.D. Irving's Cash Deposit Rate").  For this reason as well, it is evident that plaintiff was a party to the proceeding.

As plaintiff is an "interested party who is a party to the proceeding," jurisdiction "could have been available" under § 1581(c) absent the binational panel review initiated by certain other interested parties that were parties to AR 3.  *See* 19 U.S.C. § 1516a(a)(2)(A)(i)(I); 28 U.S.C. § 2631(c); *Rimco*, 98 F.4th at 1053.  Accordingly, the court lacks subject matter jurisdiction under § 1581(i).  *See Rimco*, 98 F.4th at 1053.  As the Federal Circuit held in *J.D. Irving I*, plaintiff may not use its purported challenge to the AR 3 Cash Deposit Instructions to "make an end run around the binational panel's exclusive review."  119 F.4th at 55 ("Allowing the CIT to exercise concurrent jurisdiction with a binational panel 'would strongly [and impermissibly] discourage the use of the [binational] panel system to challenge antidumping duties and make that procedure far

less effective and useful than it was intended and expected to be.'" (alterations in the original) (quoting *Canadian Wheat Bd. v. United States*, 641 F.3d 1344, 1351 (Fed. Cir. 2011))).

## CONCLUSION

For the reasons discussed above, it is hereby

**ORDERED** that defendants' motion to dismiss is **GRANTED**.  Judgment will enter accordingly.

/s/     Timothy M. Reif
Timothy M. Reif, Judge

Dated: August 21, 2025
      New York, New York